**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ALBERT PICKETT, JR., KEYONNA JOHNSON, JAROME MONTGOMERY, ODESSA PARKS, and TINIYA SHEPHERD (f/k/a TINIYA HALL), on behalf of themselves and all others similarly situated, | Case No. |
| | Judge: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **Jury Trial Demanded** |
| v. | |
| CITY OF CLEVELAND, | |
| Defendant. | |

Plaintiffs Albert Pickett, Jr., Keyonna Johnson, Jarome Montgomery, Odessa Parks, and Tiniya Shepherd (f/k/a Tiniya Hall), on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), bring this civil rights class action seeking to remedy Defendant City of Cleveland's ("Cleveland" or "the City") violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*; the U.S. Constitution, Amendment XIV, brought under 42 U.S.C. § 1983; the Ohio Constitution, Article I, § XVI; and the Ohio Civil Rights Act, Ohio Rev. Code Ann. § 4112.02(H).

**PRELIMINARY STATEMENT**

1.  Water is life: it is essential for health, hygiene, cooking, and cleaning. In and around Cleveland, however, water has put residents—disproportionately those who are Black—at risk of losing their homes due to the City's draconian policy of placing liens on properties with overdue water bills. The lack of water—through unaffordable and often erroneous bills that lead to rampant service shutoffs—also impacts thousands of Cleveland residents every year.

1

2.     Black residents of Cleveland have faced housing challenges for decades. Beginning in the early 20th century, zoning restrictions and discriminatory housing covenants excluded Black residents from certain areas of the City.[1] Practices such as redlining and "blockbusting," as well as New Deal-era urban renewal policies, interstate highway construction through Black neighborhoods, and segregated public housing, further entrenched Cleveland's housing segregation.[2] The greater Cleveland area is one of the largest metropolitan regions in the state and consistently one of the most racially segregated areas of the country.[3]

3.     Racially discriminatory practices, which have and continue to contribute to residential segregation in Cleveland, have also made it more difficult for Black Cleveland residents to retain home ownership. For example, predatory real estate lending practices are common in Black Cleveland neighborhoods.[4] Meanwhile, burdensome utility practices put Black Cleveland homeowners at an increased risk of foreclosure. As of August 2019, Cuyahoga County, where Cleveland is located, had the highest foreclosure rate in the nation (one out of every 745 housing units) among counties with at least one million people.[5]

---

[1] Lisa Sanchez, *Cleveland's Legacy of Housing Discrimination: The Great Migration*, Cleveland Public Library (June 7, 2018), https://cpl.org/clevelands-legacy-of-housing-discrimination-the-great-migration/.

[2] Amy Eddings, *Divided by Design: Tracking Neighborhood Racial Segregation in Cleveland*, ideastream (Nov. 14, 2017), https://www.ideastream.org/news/divided-by-design-tracking-neighborhood-racial-segregation-in-cleveland; Kenneth L. Kusmer, *African Americans*, Case Western Reserve University: Encyclopedia of Cleveland History, https://case.edu/ech/articles/a/african-americans (last visited Dec. 4, 2019).

[3] *See, e.g.*, *Detroit, Chicago, Memphis: The 25 Most Segregated Cities in America*, USA Today (July 20, 2019), https://www.usatoday.com/picture-gallery/money/2019/07/20/detroit-chicago-memphis-most-segregated-cities-housing-policies/1780223001/; William H. Frey, *Black-white Segregation Edges Downward Since 2000, Census Shows*, Brookings Inst. (Dec. 17, 2018), https://www.brookings.edu/blog/the-avenue/2018/12/17/black-white-segregation-edges-downward-since-2000-census-shows/; Douglas Massey & Jonathan Tannen, *A Research Note on Trends in Black Hypersegregation*, 52 Demography 1025, 1032 (2015).

[4] Claudia Colton et al., Federal Reserve Bank of Cleveland, *Facing the Foreclosure Crisis in Greater Cleveland: What Happened and How Communities Are Responding* 10 (2010), https://www.clevelandfed.org/newsroom-and-events/publications/special-reports/sr-20100101-facing-the-foreclosure-crisis-in-greater-cleveland-what-happened-and-how-communities.aspx (minority neighborhoods in Cleveland "have been more affected by subprime lending that led to foreclosure").

[5] Christine Stricker, *Top U.S. Counties with Worst Foreclosure Rates in August 2019*, ATTOM Data Solutions (Sept. 13, 2019), https://www.attomdata.com/news/market-trends/figuresfriday/top-10-u-s-counties-with-worst-foreclosure-rates-in-august-2019/.

4. According to data reported by the U.S. Census Bureau, as of July 2018, the population of Cuyahoga County was approximately 1.3 million.[6] Approximately 30.5% of the county's population is Black; nearly 60% is white; and close to 6% is Latinx.[7]

5. In 2017, the population of the City of Cleveland was 385,525.[8] Approximately 51% of Cleveland's population is Black; 34% is white; and 11% is Latinx.[9]

6. Harmful water billing and enforcement practices have plagued the Cleveland metropolitan area for nearly a decade.

7. Water rates in Cleveland are higher than nearby metropolitan areas and have sharply increased over the last decade, while household income has risen far more slowly.

8. At the same time, Cleveland Water, a department of the City of Cleveland, erroneously and arbitrarily overbills many of its customers, making them financially responsible for additional, illegitimate charges. Some billing errors may be related to water meters that were incorrectly installed by the City. Approximately 72,000 water customers complained of overbilling between 2013 and 2017.

9. When customers' water bills go unpaid, Cleveland Water shuts off their service. Cleveland Water disconnects service to thousands of customers every year. Many customers receive no notice prior to their water service shutoff.

10. Although there is a process for customers to contest their water bills before a Water Review Board prior to a service disconnection, Cleveland Water typically does not notify

---

[6] U.S. Census Bureau, *QuickFacts: Cuyahoga County, Ohio* (July 1, 2018), https://www.census.gov/quickfacts/fact/table/cuyahogacountyohio/PST045217 [hereinafter *QuickFacts: Cuyahoga County*].
[7] *Id.*
[8] U.S. Census Bureau, *QuickFacts: Cleveland City, Ohio* (July 1, 2017), https://www.census.gov/quickfacts/fact/table/clevelandcityohio/PST045217 [hereinafter *QuickFacts: Cleveland City*].
[9] *Id.*

customers of their right to appear before the Board to dispute their water charges. When customers do request a hearing, most requests are deemed "resolved" with no billing adjustment, often without a hearing. Customers who do not receive a shutoff notice or otherwise have their water service disconnected are not eligible for a hearing before the Board to contest their water bills.

11.     Through Cleveland Water's policy of failing to notify customers of impending water service disconnections and their right to a hearing to dispute their water charges prior to a disconnection, the City of Cleveland violates Cleveland Water customers' right to procedural due process provided by the U.S. and Ohio Constitutions.

12.     Additionally, through Cleveland Water's unjust and arbitrary policy of overbilling customers and failing to provide a hearing process to contest erroneously high bills, the City of Cleveland violates Cleveland Water customers' right to procedural due process and equal protection provided by the U.S. and Ohio Constitutions.

13.     The inaccuracies and problems in Cleveland Water's billing practices heighten the unfairness of its ultimate enforcement tool: when customers fall behind on their water bills, Cleveland Water converts the unpaid water debt to a lien on their properties (referred to herein as a "water lien"), diminishing equity in their homes and placing residents at risk of foreclosure and eventual eviction.

14.     From 2014 to 2018, Cleveland Water placed more than 11,000 water liens on properties in Cuyahoga County. During that same period, nearly 6,000 residents found themselves in tax foreclosure. On information and belief, many of these foreclosures were the result of unpaid water debt.

15.     Between 2014 and 2018, Cleveland Water placed significantly more water liens in majority-Black Census blocks than in majority-white blocks in Cuyahoga County. For example,

4

in 2014, 2015, and 2017, the number of water liens placed in majority-Black Census blocks was more than triple the number placed in majority-white blocks.

16. Cuyahoga County is only 30.5% Black, but 61.1% of residents who lived in a Census block that contained a property with a water lien between 2014 and 2018 were Black. While approximately 60% of Cuyahoga County's population is white, only 29.5% of residents living in a Census block with a water lien during this time period were white.

17. The disparate impact of Cleveland Water's water lien policy on Black residents exists independent of income. Even comparing neighborhoods with the same median income, water liens are disproportionately placed in predominantly Black neighborhoods in Cuyahoga County compared to white neighborhoods.

18. Cleveland Water recovers only a minimal portion of its revenue from its water lien policy. Between 2012 and 2016, revenue from water liens accounted for only 0.59% of Cleveland Water's operating revenue.

19. Through Cleveland Water's water lien policy, the City of Cleveland discriminates against Black residents, disproportionately placing them at risk of foreclosure and eviction in violation of the FHA and the Ohio Civil Rights Act.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this suit pursuant to 42 U.S.C. § 3613(a) and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 1367(a), and 2201.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Cleveland is a political subdivision located in this District and the events giving rise to the claims occurred in this District.

5

# PARTIES

## *Plaintiffs*

22.     Plaintiff Albert Pickett, Jr. is a resident of East Cleveland, Ohio. He is Black. At all times relevant to his allegations herein, Mr. Pickett was a resident of East Cleveland in Cuyahoga County and a citizen of the United States.

23.     Plaintiff Keyonna Johnson is a resident of Cleveland, Ohio. She is Black. At all times relevant to her allegations herein, Ms. Johnson was a resident of Cleveland in Cuyahoga County and a citizen of the United States.

24.     Plaintiff Jarome Montgomery is a resident of Warrensville Heights, Ohio. He is Black. At all times relevant to his allegations herein, Mr. Montgomery was a resident of Warrensville Heights in Cuyahoga County and a citizen of the United States.

25.     Plaintiff Odessa Parks is a resident of Cleveland, Ohio. She is Black. At all times relevant to her allegations herein, Ms. Parks was a resident of Cleveland in Cuyahoga County and a citizen of the United States.

26.     Plaintiff Tiniya Shepherd (f/k/a Tiniya Hall[10]) is a resident of Cleveland, Ohio. She is Black. At all times relevant to her allegations herein, Ms. Shepherd was a resident of Cleveland in Cuyahoga County and a citizen of the United States.

## *Defendant*

27.     Defendant City of Cleveland is a municipal corporation organized under the laws of the State of Ohio. Defendant's office is located in the City of Cleveland, within Cuyahoga County.

28.     Cleveland Water, a department of the City of Cleveland, provides water services to

---

[10] Before recently finalizing a divorce, Ms. Shepherd went by the name Tiniya Hall. Although she is referred to herein as Ms. Shepherd, many of her water service-related documents refer to her as Tiniya Hall.

1.5 million customers in over 70 communities across Greater Cleveland, including East Cleveland and Warrensville Heights.[11] Cleveland Water serves as the major public water supply system for Cleveland, as well as other municipalities in Cuyahoga, Portage, Medina, Summit, and Geauga Counties.[12] In 2017, Cleveland Water's operating revenue was $305.1 million.[13] Its total operating expenses, exclusive of depreciation, were $185.4 million.[14]

## STATEMENT OF FACTS

### Water Billing Issues and Service Shutoffs in Cleveland

29.     Water bills in Cleveland include fixed and consumption charges.[15] The fixed charge, which totals nine dollars a month for the typical residential customer, is based on the water meter size.[16] The consumption charge is determined by the distance and elevation of the customer's address from Lake Erie, as well as the customer's usage.[17]

30.     Cleveland Water measures water usage in thousand cubic feet (MCF). In 2019, a home in the City of Cleveland that uses up to 0.2 MCF (1,496 gallons) of water in a month is charged $20.57, with additional usage resulting in a charge of $34.97 per MCF (7,480 gallons) of water, prorated to the customer's actual usage.[18] Rates increase in the outlying suburbs, for example, in Warrensville Heights, where Mr. Montgomery resides.[19] Cleveland transitioned from quarterly to monthly billing in January 2017.[20]

---

[11] City of Cleveland Water, 2017 Annual Report 12-13 (2017), http://www.clevelandwater.com/2017-annual-report.pdf.
[12] *Id.*
[13] *Id.* at 14.
[14] *Id.*
[15] City of Cleveland Water, *Water Rates: Rates and Fees*, www.clevelandwater.com/customer-service/water-rates/rates-fees (last visited Dec. 4, 2019). Most residential water customers have a meter between 5/8 inch and one inch. *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* These rates will increase to $21.85 and $37.14, respectively, in 2020. *Id.*
[19] *Id.*
[20] City of Cleveland Water, *Water Rates: Monthly Billing*, www.clevelandwater.com/monthly-billing (last visited Dec. 4, 2019).

31.     The average monthly residential water usage in the United States is approximately 2,400 to 3,000 gallons per individual[21] and more than 9,000 gallons per family.[22]

32.     Between 1993 and 2015, water rates in Cleveland increased by an average of 7% per year, with a significant increase between 2011 and 2015. According to one study, rates nearly doubled between 2010 and 2017, from an average of $630.41 to $1,249.29 per year for a family of four.[23] Rates are expected to increase by between $16 and $32 per year for the average residential customer in 2019 and 2020.[24]

33.     While water rates in Cleveland increased by almost 100% between 2010 and 2017, the median household income in Cuyahoga County increased by only 13.3% in that same time period.[25]

34.     In a 2019 study of water rates in the Great Lakes region by American Public Media Reports, Great Lakes Today, and National Public Radio, researchers found that Cleveland's water rates were higher than the rates charged in Chicago, Milwaukee, Detroit, Buffalo, and Duluth.[26]

35.     On information and belief, despite the staggering increase in water rates and the very small increase in median household income, Cleveland Water's payment requirements and water lien policy, as described further below, have remain unchanged between 2014 and the present.

---

[21] U.S. Geological Survey, *Water Q&A: How Much Water Do I Use at Home Each Day?*, https://www.usgs.gov/special-topic/water-science-school/science/water-qa-how-much-water-do-i-use-home-each-day?qt-science_center_objects=0#qt-science_center_objects (last visited Dec. 4, 2019).
[22] U.S. Envtl. Protection Agency, *How We Use Water*, https://www.epa.gov/watersense/how-we-use-water#Understanding%20Water%20Use (last visited Dec. 4, 2019).
[23] Elizabeth Miller, *As Rates Rise, Cleveland Water and Sewer Grapples with Affordability*, ideastream (Feb. 8, 2019), https://www.ideastream.org/news/as-rates-rise-cleveland-water-and-sewer-grapples-with-affordability.
[24] City of Cleveland Water, *Proposed Cleveland Water Rates for the Next Five Years* (Oct. 19, 2015), http://www.clevelandwater.com/blog/rates.
[25] Federal Reserve Bank of St. Louis & U.S. Census Bureau, *Estimate of Median Household Income for Cuyahoga County, OH*, https://fred.stlouisfed.org/series/MHIOH39053A052NCEN (last visited Dec. 4, 2019).
[26] Miller, *supra* note 23.

8

36.     Rising water rates often disproportionately impact communities of color.[27] In Ohio, Black workers' wages lag far behind those of white workers, and the gap has grown over time. In 2017, the median Black full-time worker in Ohio was paid $9,500 less than their white counterpart.[28]

37.     In addition to rate increases, Cleveland Water has been plagued by overbilling errors. Approximately 72,000 water customers complained of overbilling between 2013 and 2017.[29] In 2015 alone, Cleveland Water received approximately 16,000 water customer complaints related to overbilling.[30] On information and belief, while Cleveland Water claimed that some of the high bills were due to leaks, many customers insisted there were no leaks—and some hired plumbers to confirm there were none.

38.     Customers have also experienced billing glitches, including erroneously high water bills, from water meters that were broken or incorrectly installed by the City. A 2017 news report determined that nearly 400,000 new wireless "smart meters" had been incorrectly installed, producing inaccurate bills.[31]

39.     Under state law in Ohio, "the director of public service or any other city official or body authorized by charter may assess and collect a water rent or charge of sufficient amount and in such manner as the director, other official, or body determines to be the most equitable from all

[27] *See, e.g.*, Brett Walton, *Water Affordability is a New Civil Rights Movement in the United States*, Circle of Blue (Mar. 22, 2016), http://www.circleofblue.org/2016/water-policy-politics/water-rights-access/water-affordability-new-civil-rights-movement-united-states/.

[28] Amy Hanauer & Grace Chu, Policy Matters Ohio, *State of Working Ohio 2018: Inequality amid job growth* 7 (2018), https://www.policymattersohio.org/files/research/sowo2018.pdf.

[29] Ron Regan, *Cleveland Water Customers Could Face Higher Bills Due to Critical Meter Installation Error*, News 5 Cleveland (updated Feb. 16, 2017), https://www.news5cleveland.com/news/local-news/investigations/cleveland-water-customers-could-face-higher-bills-due-to-critical-meter-installation-error [hereinafter Regan, *Installation Error*].

[30] Ron Regan et al., *Drowning in Dysfunction: How the Cleveland Water Department is Failing its Community, Violating Rights*, News 5 Cleveland (Dec. 22, 2016), https://www.news5cleveland.com/longform/drowning-in-dysfunction-how-the-cleveland-water-dept-is-failing-its-community-violating-rights [hereinafter Regan et al., *Drowning in Dysfunction*].

[31] Regan, *Installation Error*, *supra* note 29.

tenements and premises supplied with water."[32] State law also provides that water service in Ohio may be disconnected only for specified reasons, such as nonpayment, tampering, contamination, and refusal to allow access to utility equipment.[33]

40.     Additionally, Cleveland Water may only disconnect water service to customers upon "strict compliance" with the procedures set forth by the amended consent order in *Colegrove v. City of Cleveland*, No. 74-1007 (N.D. Ohio June 25, 1987) (attached as Exhibit A). The consent order provides that the City "has the duty and responsibility to provide water/sewer customers with notice and an opportunity to be heard prior to termination of service, unless the reason for the termination is to prevent emergency waste." Ex. A at App. A, p. 2. It further provides that:

> Written notice must be given personally or sent by U.S. Mail to customers whose services are to be terminated for any reason except to prevent emergency waste that they may request a hearing to dispute the proposed termination prior to actual termination of service. The notice shall clearly state the reason for the proposed termination and shall include [this notice] so as to advise the customer of the above rights.

*Id.* at App. A, p. 3.

41.     The *Colegrove* consent order requires the creation of a Water Review Board to provide a hearing process for Cleveland Water customers who dispute their bills prior to disconnection of service. *Id.* at App. A, pp. 1-6. The Water Review Board has the authority to order that water service not be terminated, to reduce the amount owed by a customer to Cleveland Water, and to prescribe payment plans for customers to pay owed debt in installments. *Id.* at App. A, pp. 1-2.

42.     Despite the strict procedures set forth in the *Colegrove* consent order, water service shutoffs are a pervasive problem in Cleveland. Upon information and belief, Cleveland Water

---

[32] Ohio Rev. Code Ann. § 743.04(A).
[33] Ohio Admin. Code § 4901:1-15-27.

disconnects water service to thousands of customers per year. Many of these customers receive no notice of the impeding disconnection, in violation of the terms of the *Colegrove* consent order.

43.     Cleveland Water has stated that it determines where to disconnect service based on geographic zone and account balance amounts. Upon information and belief, once the department selects a geographic zone for service disconnections, it shuts off all overdue accounts concentrated in that area regardless of the amount of the unpaid balance or the age of the arrearage.

44.     Additionally, in violation of the *Colegrove* consent order, Cleveland Water does not notify many customers about their right to a hearing before the Water Review Board prior to disconnecting their service.

45.     Upon information and belief, Cleveland Water has failed to adequately train its personnel to comply with the *Colegrove* consent order and provide constitutionally sufficient and meaningful notice to customers prior to a water service disconnection.

46.     Customers who become aware of their right to a Water Review Board hearing and request one rarely get meaningful relief, whether they receive a hearing or Cleveland Water deems their complaint "resolved" without a hearing. For example, based on data provided by Cleveland Water in response to a public records request, 857 Cleveland Water customers requested Water Review Board hearings to address what they believed to be billing errors from 2013 through 2018. Of these, 535 (62%) received no adjustment to their bill. Furthermore, during this period, 621 customers (72%) who requested Water Review Board hearings did not receive one, with Cleveland Water claiming that the customers' complaints were "resolved" in advance of the hearing. Cleveland Water does not publish data on the nature of these resolutions or whether customers were provided meaningful relief or an opportunity to be heard before their complaints were closed. Customers who did receive hearings before the Review Board did not fare much better. Of the 236

hearings held from 2013 through 2018, only 91 customers (38%) received any adjustment to their bills. More than half received a payment plan. Upon information and belief, payment plans were issued to customers even with proof that their bills were erroneously high, forcing them to pay a debt they did not owe over time. Six percent received no relief at all.

47.     The terms of the *Colegrove* consent order only apply to Cleveland Water customers at risk of an impending service disconnection. If Cleveland Water does not send a shutoff notice or otherwise disconnect a customer's service, it provides no mechanism for a customer to contest their water bill through a hearing process.

48.     Customers have also experienced customer service issues with Cleveland Water. Cleveland Water does not notify customers about their right to a Water Review Board hearing even when they contact customer service with complaints. Customers have also complained that Cleveland Water's customer service team frequently hangs up on callers and exhibits rude behavior.

49.     Upon information and belief, unlike other major utilities in Cleveland, which are subject to regulation by the Ohio Public Utilities Commission, Cleveland Water is unregulated and reports only to a Cleveland City Council committee.[34]

**The Water Lien Foreclosure Crisis in Cleveland**

50.     Ohio law allows a past due water bill to be placed as a tax lien on the customer's property.[35] This Complaint refers to these liens as water liens to distinguish them from other financial obligations that appear on a customer's tax bill.

51.     Twice a year, in September and March, Cleveland Water places water liens on

---

[34] Regan et al., *Drowning in Dysfunction*, *supra* note 30.
[35] Ohio Rev. Code Ann. § 743.04; Ohio Rev. Code Ann. § 6103.02; *see also* Ohio Admin. Code Ann. § 4901:1-15-27.

properties for outstanding debt, which are added to customers' taxes in the county where water service is provided.[36] In Cuyahoga County, a water lien is listed on a customer's tax bill as "Delinquent Water" or "Delq Water." There does not appear to be any statutory minimum arrearage required to initiate the water lien process.[37]

52.     Having a water lien places a property at a higher risk of tax and/or mortgage foreclosure and places the owner or tenant at risk of eventual eviction.

53.     In Ohio, the county treasurer can initiate a foreclosure action against a homeowner when water or other liens remain unpaid.[38] If the court enters a foreclosure judgment, the home is sold at auction to satisfy the debt.[39]

54.     Alternatively, the county treasurer can sell a lien on a home at auction.[40] At the auction, the lien certificate is awarded to the bidder with the lowest rate of interest on the debt.[41] Following the sale, the purchaser becomes the owner of the lien. Subsequently, after a one-year redemption period, the lien purchaser can file a lawsuit to foreclose on the property.[42] Once the foreclosure is finalized, the homeowner loses ownership of the home and the owner or tenant is evicted from the property.[43]

55.     According to publicly available data from Cuyahoga County, Cleveland Water placed more than 11,000 water liens on properties between 2014 and 2018. During that time period, nearly 6,000 residents found themselves in tax foreclosure.

56.     On information and belief, many of these foreclosures resulted, at least in part, from

---

[36] Ohio Rev. Code Ann. § 743.04; Ohio Rev. Code Ann. § 6103.02.
[37] Ohio Rev. Code Ann. § 323.01.
[38] Ohio Rev. Code Ann. § 5721.18.
[39] *Id.*
[40] Ohio Rev. Code Ann. § 5721.31.
[41] Ohio Rev. Code Ann. § 5721.32.
[42] Ohio Rev. Code § 5721.39.
[43] *Id.*

unpaid water debt.

57.     In addition to tax foreclosure by Cuyahoga County and by private lien purchasers,[44] water liens placed by Cleveland Water can heighten the risk of mortgage foreclosure.

58.     Many mortgages include escrow accounts, maintained by the mortgagee or mortgage servicer, into which borrowers make payments every month, and out of which property taxes and insurance are paid. Even when a borrower's mortgage does not include an escrow account, the loan and security documents often authorize the mortgagee or servicer to create an escrow account if the borrower falls behind on their taxes or insurance.

59.     Upon information and belief, when taxes, including charges for overdue water debt, become delinquent, many homeowners' mortgage lenders or servicers pay the delinquent amount and subsequently increase the borrowers' monthly payments to account for the escrow deficiency. This can happen automatically and without any input from the homeowner. In fact, homeowners in Cleveland, including Ms. Shepherd, have seen their monthly escrow payments increase due to a water lien. Upon information and belief, some homeowners had no knowledge of any water lien until their escrow payment was increased.

60.     Upon information and belief, increases in mortgage payments for any reason, including to compensate for escrow deficiencies, are a primary driver of foreclosure. In August 2019, one out of every 745 housing units in Cuyahoga County was in foreclosure—the highest foreclosure rate in the country among counties with at least one million people.[45]

61.     Mortgage foreclosure can lead directly to the loss of ownership of the home and to

---

[44] According to publicly available data from the Cuyahoga County court system, there were 1,559 tax foreclosure cases filed in 2014. Of these, 574 (37%) were filed by the county directly, and 985 (63%) were filed by private lien purchasers. By contrast, in 2018, there were 2,210 tax foreclosure cases filed. Of these, 2,034 (92%) were filed by the county, and only 176 (8%) were filed by private lien purchasers.

[45] Stricker, *supra* note 5.

the eviction of the owner or tenant.

62.     Cleveland Water has stated that it recovered $8.5 million through the tax lien process between 2012 and 2016, representing only 0.59% of its operating revenue.[46]

**Defendant's Actions Have a Disparate Impact on Cleveland's Black Residents**

63.     Cleveland Water's relatively unusual practice of converting water debt, even for very small amounts, to liens on properties puts Black residents at a significantly higher risk of foreclosure than white residents in the Cleveland area. Cleveland Water's well-documented billing problems and reported overcharging has compounded the harm of heightened foreclosure risk from water liens experienced by Black residents and communities.

64.     According to data reported by the U.S. Census Bureau, as of July 2018, the population of Cuyahoga County was approximately 1.3 million.[47] Approximately 30.5% of the county's population is Black; nearly 60% is white; and close to 6% is Latinx.[48]

65.     In 2017, the population of the City of Cleveland was 385,525.[49] Approximately 51% of Cleveland's population is Black; 34% is white; and 11% is Latinx.[50]

66.     An analysis of publicly available data demonstrates that Cleveland Water's practice of converting water debt to liens results in the heavy concentration of water liens in majority-Black neighborhoods.

67.     A disproportionate number of water liens are placed in Black neighborhoods, and the disparities are statistically significant. Specifically:

    a.  In 2014, of water liens placed by Cleveland Water in Cuyahoga County, 66.7% were

---

[46] City of Cleveland Water, *Controlling Costs for all Cleveland Water Customers* (Jan. 26, 2017), http://www.clevelandwater.com/blog/controlling-costs-all-cleveland-water-customers.
[47] *QuickFacts: Cuyahoga County*, *supra* note 6.
[48] *Id.*
[49] *QuickFacts: Cleveland City*, *supra* note 8.
[50] *Id.*

placed in majority-Black Census blocks, while only 22.1% were placed in majority-white Census blocks.

b. In 2015, of water liens placed by Cleveland Water in Cuyahoga County, 69.6% were placed in majority-Black Census blocks, while only 20.7% were placed in majority-white Census blocks.

c. In 2016, of water liens placed by Cleveland Water in Cuyahoga County, 55.2% were placed in majority-Black Census blocks, while only 27.9% were placed in majority-white Census blocks.

d. In 2017, of water liens placed by Cleveland Water in Cuyahoga County, 78.9% were placed in majority-Black Census blocks, while only 22.6% were placed in majority-white Census blocks.

e. In 2018, of water liens placed by Cleveland Water in Cuyahoga County, 65.3% were placed in majority-Black Census blocks, while only 22.9% were placed in majority-white Census blocks.

68. These disparities also exist on the Census tract level and are statistically significant. Specifically:

a. In 2015, Cleveland Water placed 68.9% of water liens in majority-Black tracts in Cuyahoga County and only about 18% in majority-white tracts. *See* Figure 1 below.

b. In 2016, Cleveland Water placed 52.9% of water liens in majority-Black tracts in Cuyahoga County and only 23.3% in majority-white tracts. *See* Figure 2 below.

c. In 2017, Cleveland Water placed 68.9% of water liens in majority-Black tracts in Cuyahoga County, and only 18% in majority-white tracts. *See* Figure 3 below.

d. In 2018, Cleveland Water placed 66.3% of water liens in majority-Black tracts in

Cuyahoga County and only 21.5% in majority-white tracts. *See* Figure 4 below.



**Figure 1.** Water Liens Placed by Cleveland Water and Percentage of Black Residents in Census Tracts in Cuyahoga County (Calendar Year 2015).



**Figure 2.** Water Liens Placed by Cleveland Water and Percentage of Black Residents by Census Tract in Cuyahoga County (Calendar Year 2016).



**Figure 3.** Water Liens Placed by Cleveland Water and Percentage of Black Residents by Census Tract in Cuyahoga County (Calendar Year 2017).



**Figure 4.** Water Liens Placed by Cleveland Water and Percentage of Black Residents by Census Tract in Cuyahoga County (Calendar Year 2018).

69.     In addition to the liens being disparately placed in Black neighborhoods, residents living on blocks with at least one property with a water lien are significantly more likely to be Black than residents living on blocks with no water liens. Black residents comprised 61.1% of those who live in Cuyahoga County Census blocks where Cleveland Water placed water liens between 2014 and 2018, despite being only 30.5% of Cuyahoga County's population. While approximately 60% of Cuyahoga County's population is white, only 29.5% of residents living in a Census block with a water lien are white. This disparity is statistically significant.

70.     Cleveland Water's practice of converting water debt to liens on property—liens that are disproportionately placed in majority-Black areas—significantly diminishes the home equity of Cuyahoga County's Black residents, as compared to white residents, and puts Black residents at a greater comparable risk of foreclosure and eventual eviction.

71.     The disparate impact of Cleveland Water's water lien policy on Black residents is independent of those residents' income. When comparing geographic units with the same median income, Cleveland Water places water liens disproportionately in predominantly Black areas as compared to predominantly white areas.

72.     Cleveland Water's discriminatory practice of converting water bills to liens—disproportionately placing Black residents at risk of foreclosure and eviction—fails to generate significant revenue for the City. Cleveland Water has reported that less than one percent of its operating revenue comes from collections through the property tax system.

**The Named Plaintiffs Have and Will Continue to be Harmed by Defendant's Actions**

73.     Plaintiff Albert Pickett, Jr. is a 59-year-old Black man who is a lifelong resident of East Cleveland. He and his sister co-own their childhood home. In 2018, Mr. Pickett suffered a stroke and related spinal fracture and moved into a rehab facility, but he recently returned to live in his home in July 2019.

74.     Mr. Pickett initially moved back into his childhood home after the death of his mother in 2010. At the time, there was an unpaid balance on the water account. Mr. Pickett, whose sole income is disability benefits, could not afford to pay this balance.

75.     Mr. Pickett attempted to negotiate a payment plan with Cleveland Water but was denied because he could not afford a down payment of several hundred dollars. In his interactions with Cleveland Water, Mr. Pickett was never told about his right to a hearing before the Water Review Board.

76.     In 2013, Cleveland Water shut off water service to Mr. Pickett's property. Mr. Pickett has lived in the home without water service for more than six years. He buys bottled water or goes to neighbors' houses to obtain water for his needs, including to take his medication.

77.     In 2016, Cleveland Water placed a lien on Mr. Pickett's property based on an overdue water bill totaling $543.92. The amount owed on the lien increased as interest, penalties, and fees were added over time. Subsequently, the property was placed in tax foreclosure.

78.     In February 2019, Mr. Pickett's sister paid the outstanding tax balance on the property, including the water lien, which totaled $741.21 when it was paid off. Cleveland Water claims that Mr. Pickett still owes $2,800 in water debt even though his water has been shut off since 2013. Mr. Pickett believes these charges are erroneous but has not been given an opportunity for a hearing before the Water Review Board to contest them.

79.     On October 21, 2019, Mr. Pickett's home was severely damaged in a house fire. Mr. Pickett returned home shortly after the fire started and believes he could have extinguished it if he had a water connection. However, because water service was disconnected on his property, he was unable to extinguish the fire.

80.     Mr. Pickett is not currently living in the home due to the damage from the fire. He

now stays with a friend, at a shelter, or in his car.

81.    Plaintiff Keyonna Johnson is a 29-year-old Black woman who grew up in Cleveland and has lived there most of her life.

82.    She bought her current home in 2010. She initially lived there and then rented out the property from approximately 2012 to 2015.

83.    About two years after purchasing the home, Ms. Johnson's water bills inexplicably spiked to around $500 a month. She contacted Cleveland Water about the high bills and negotiated a payment plan to pay off her unpaid charges. Cleveland Water also told her they would send someone to inspect her water meter. Ms. Johnson does not know if anyone from Cleveland Water ever conducted this inspection.

84.    In 2015, Cleveland Water placed a lien on Ms. Johnson's property based on an overdue water bill totaling $1,355.73. The amount owed on the lien increased as interest, penalties, and fees were added over time.

85.    In 2015, cold temperatures caused a pipe to burst on the property. Ms. Johnson and her son were living in the home at the time but moved out due to the damage. Ms. Johnson asked Cleveland Water to shut off her water service while the pipe was being repaired and decided to leave it disconnected because no one was living in the house at the time.

86.    The plumber who fixed the broken pipe confirmed there were no other leaks in the house that could have explained the prior high bills. He also informed Ms. Johnson that her water meter was flooded and questioned how Cleveland Water could have assessed accurate water charges based on a meter in that condition.

87.    Ms. Johnson left her water disconnected for over a year but continued to receive high water bills during that time. At some point in 2017, Ms. Johnson's water bill showed a zero

24

balance so she asked for the water service to be reconnected, and she and her son moved back into the house. Unbeknownst to her, Cleveland Water had placed a second lien on her property that year, based on an overdue water bill totaling $1,811.50. The amount owed on the second lien increased as interest, penalties, and fees were added over time. On information and belief, placing this water debt on Ms. Johnson's taxes led to the zero balance on her water bill.

88.     Ms. Johnson currently owes $1,976.20 on her first water lien and $2,197.76 on her second lien, for a total of $4,173.96. These liens place her at an increased risk of foreclosure and eviction.

89.     After turning her water service back on, Ms. Johnson continued to receive bills with inflated charges, including a first monthly bill of approximately $600. She again fell behind on payment and received a shutoff notice. She contacted Cleveland Water and negotiated a payment plan, which required her to pay half of the outstanding balance up front. She is worried that Cleveland Water will place another water lien on her property.

90.     Ms. Johnson faces financial hardship, in part due to unaffordable water bills, and filed for bankruptcy in March 2019. The bankruptcy action had no effect on her water debt or water liens.

91.     In her communications with Cleveland Water, Ms. Johnson was advised about the Water Review Board, but when she tried to call the Board to request a hearing, she could not get through.

92.     Plaintiff Jarome Montgomery is a 48-year-old Black man who lives in Warrensville Heights.

93.     Mr. Montgomery has received what he believes are inflated water bills for many years, including a period of time when no one was living at his property. He has twice had a

plumber inspect his property to confirm there were no leaks that could have caused the high bills. The first plumber discovered that the water meter on Mr. Montgomery's property was not hooked up, which led Mr. Montgomery to further question the basis for the bills he received from Cleveland Water. Subsequently, Cleveland Water installed a new meter, but Mr. Montgomery's water bills remained inexplicably high.

94.    In 2013, Mr. Montgomery narrowly avoided tax foreclosure by entering a payment plan with Cuyahoga County for his delinquent tax balance.

95.    In 2015, Cleveland Water placed a water lien on Mr. Montgomery's home based on an overdue water bill totaling $5,841.46. The amount owed on the lien increased as interest, penalties, and fees were added over time. This doubled the tax balance he owed to Cuyahoga County. Mr. Montgomery subsequently worked out another payment plan with the county, but he struggles to afford the $1,200 payment each month.

96.    In 2018, Cleveland Water placed a second water lien on Mr. Montgomery's home based on an overdue water bill totaling $2,438.33. The amount owed on the second lien increased at interest, penalties, and fees were added over time. This second lien imperiled his payment plan with the county. He currently owes a total of $5,703.36 on his two liens, placing him at an increased risk of foreclosure and eventual eviction.

97.    In July 2019, Cleveland Water billed Mr. Montgomery for approximately $2,500 in water charges. Mr. Montgomery believes these charges are erroneous and has contacted Cleveland Water to dispute the charges, but Cleveland Water did not adjust the amount owed. He is not eligible for a Water Review Board hearing because water service cannot be disconnected in his apartment building.

98.    In November 2019, Cleveland Water notified Mr. Montgomery that it will place

26

yet another water lien on his property in March 2020 for an unpaid water bill of $427.28. At the time, Mr. Montgomery was six months behind on his water bill.

99.  Plaintiff Odessa Parks is an 81-year-old Black woman and a lifelong resident of Cleveland. She has owned two homes in Cleveland for more than 30 years, one of which she uses as a rental property.

100.  In 2014, around the time her husband died, Ms. Parks's water bills at the rental property increased by more than 300%. She repeatedly contacted Cleveland Water to report a billing problem but was told she must have a leak. Ms. Parks paid at least three plumbers to inspect her property, and none found any leaks. After a few months of inflated bills, her monthly charge went back down to a normal amount, but Cleveland Water refused to waive the higher charges. In her many in-person and phone interactions with Cleveland Water, she was not told of her right to a hearing before the Water Review Board.

101.  Ms. Parks, who lives on a fixed income, was unable to pay the increased water charges. In 2015, Cleveland Water placed a lien on her property based on an overdue water bill totaling $2,870.96. The amount owed on the lien increased as interest, penalties, and fees were added over time.

102.  Upon information and belief, Ms. Parks's water lien was eventually sold to a private investor and her home was placed in tax foreclosure.

103.  In 2017, after enduring years of stressful collection attempts and uncertainty about her house, Ms. Parks was offered a payment plan by Cuyahoga County. While her bill was not reduced, Ms. Parks agreed to pay approximately $100 per month, on top of her normal water bill, to pay off her water lien with its accrued interest and fees. In addition to paying her regular water bill, Ms. Parks has been making payments on her payment plan for more than two years, which

has been difficult for her to manage on her fixed income.

104.    Ms. Parks currently still owes nearly $900 on her water lien.

105.    The water lien places Ms. Parks at a high risk of foreclosure.

106.    Plaintiff Tiniya Shepherd is a 37-year-old Black woman who lives in Cleveland with her three children.

107.    Ms. Shepherd has owned her home since 2006. She has a mortgage on the property.

108.    Ms. Shepherd occasionally saw spikes in her water bill charges for unexplained reasons. Five years ago, Ms. Shepherd contacted a city hotline about a high bill and was instructed to check for leaks. An inspector from Cleveland Water and Ms. Shepherd's uncle both checked her home for leaks and found nothing.

109.    Ms. Shepherd was often unable to afford her water bill. She attempted to negotiate a payment plan with Cleveland Water but was not offered one that was affordable. She was never notified of her right to a hearing before the Water Review Board.

110.    At various times, Cleveland Water has shut off Ms. Shepherd's water service, including in early 2016 and in May 2018. She did not receive notice of the shutoffs prior to the disconnection of her service, nor was she notified of a right to a hearing before the Water Review Board.

111.    In 2018, Cleveland Water placed a lien on her property based on an overdue water bill totaling $710.84. The amount owed on the lien was approximately $717.94 when penalties and fees were added.

112.    Ms. Shepherd's mortgage company paid off the water lien and subsequently raised her monthly mortgage payments to cover the escrow deficiency. The mortgage payments are now unaffordable, and Ms. Shepherd is at risk of foreclosure and eviction.

113.     Ms. Shepherd owned a second home in Cleveland that she used as a rental property. She recently sold this house to help pay the increased mortgage payments on her first home.

## CLASS ALLEGATIONS

114.     Plaintiffs bring this case as a proposed class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

115.     Plaintiffs request that this Court certify three main classes and one subclass as follows:

a.  A class of all Black homeowners or residents in Cuyahoga County who have been obligated, within the last two years, to pay a debt secured by their property stemming from amounts originally owed to Cleveland Water ("Water Lien Class");

b.  A subclass of all Black homeowners or residents in Cuyahoga County who have been obligated, within the last two years, to pay increased mortgage escrow payments as a result of their mortgagee or mortgage servicer satisfying a debt secured by the property stemming from amounts originally owed to Cleveland Water ("Escrow Subclass");

c.  A class of all persons who, within the last two years, have had their water service disconnected by Cleveland Water and did not receive advance written notice of the shutoff or their right to request a hearing to dispute the impending disconnection ("Shutoff Class"). This class excludes any person whose water service was disconnected without notice to prevent emergency waste; and

d.  A class of all persons who, within the last two years, have been overbilled for water services by Cleveland Water and did not receive an opportunity to contest their bill through a hearing ("Overbilling Class").

116.     All Named Plaintiffs are members of the Water Lien Class they seek to represent.

117.    Named Plaintiff Tiniya Shepherd is a member of the Escrow Subclass she seeks to represent.

118.    Ms. Shepherd is also a member of the Shutoff Class she seeks to represent.

119.    Named Plaintiffs Albert Pickett, Keyonna Johnson, and Jarome Montgomery are members of the Overbilling Class they seek to represent.

120.    The members of each class and subclass are collectively referred to as "Class Members."

121.    Plaintiffs reserve the right to amend the definition of the above-defined classes based on discovery or legal developments.

122.    This action is properly maintained as a class action because:

a.  Joinder of all Class Members is impracticable because of the size of each respective class or subclass. Upon information and belief, each class or subclass includes at least several hundred, if not several thousand, members.

b.  Defendant has acted or refused to act on grounds generally applicable to each respective class or subclass.

c.  Common questions of law and fact exist as to Class Members within each respective class or subclass and predominate over any questions affecting only individual members. Common legal and factual questions include but are not limited to: (i) whether Cleveland Water's process for charging for water service, collecting unpaid water debt, and/or converting unpaid water debt to water liens on customer properties is unlawful; (ii) whether Defendant's policies and practices have a disparate impact on Black residents in violation of the FHA and the Ohio Civil Rights Act; (iii) whether any disparate impact is justified by a substantial, legitimate, nondiscriminatory interest;

(iv) whether Defendant has a policy or practice of failing to notify Cleveland Water customers of the impending disconnection of their water service; (v) whether Defendant has a policy or practice of failing to notify eligible Cleveland Water customers of their right to a hearing before the Water Review Board prior to disconnection of their water service; (vi) whether Defendant's failure to provide notice to Cleveland Water customers of water service disconnections and their right to a hearing prior to disconnection is unlawful; (vii) whether Defendant's failure to provide a hearing to Cleveland Water customers who are overbilled, regardless of whether they received a water shutoff notice or had their water service disconnected, is unlawful; (viii) whether punitive damages for Class Members are warranted; and (ix) whether a declaratory judgment and/or injunctive relief are warranted regarding Defendant's policies and practices.

d. Plaintiffs' claims are typical of the claims of the classes they seek to represent.

e. A class action is superior to the other available methods to adjudicate this litigation fairly and efficiently.

f. There will be no difficulty in the management of this action as a class action. Moreover, judicial economy will be served by maintaining this lawsuit as a class action because it will likely prevent individual harmed persons from filing thousands of similar suits, which would otherwise burden the judicial system. There are no obstacles to effective and efficient management of this lawsuit as a class action.

123. Plaintiffs will fairly and adequately represent and protect the interests of Class Members because their interests coincide with—and are not antagonistic to—the interests of the Class Members they seek to represent. Plaintiffs have retained Counsel who are competent and

have extensive experience in federal civil rights, constitutional, consumer, and class action litigation.

## CAUSES OF ACTION

### COUNT ONE
### Race Discrimination Under the Fair Housing Act
### 42 U.S.C. §§ 3601 *et seq.*
### All Plaintiffs Against Defendant City of Cleveland

124.    Plaintiffs, on behalf of themselves, the Water Lien Class, and the Escrow Subclass, incorporate by reference the allegations in all preceding paragraphs.

125.    Defendant's discriminatory policy and practice of placing water liens on residents' properties causes Black residents of Cuyahoga County to suffer an increased risk of foreclosure and eviction relative to white residents.

126.    By the actions described above, Defendant has violated, and/or continues to violate, the rights of Plaintiffs, the Water Lien Class, and the Escrow Subclass under the FHA, 42 U.S.C. §§ 3601 *et seq.* and implementing regulations by making dwellings unavailable to persons because of race, in violation of 42 U.S.C. § 3604(a) and implementing regulations.

127.    By the actions described above, Defendant has engaged in, and continues to engage in, a policy, pattern, and practice of discrimination against Black residents of Cuyahoga County, Ohio due to their race, or the racial composition of their neighborhood, in violation of the FHA.

128.    The past and continuing acts and conduct of the Defendant, described above, had and have a harmful disparate impact on Black homeowners and residents, in violation of the federally protected rights of Plaintiffs, the Water Lien Class, and the Escrow Subclass.

129.    Defendant's discriminatory policy and practice of converting water debt to liens placed on Black residents' properties has harmed and continues to harm Plaintiffs, the Water Lien Class, and the Escrow Subclass, and constitutes unlawful discrimination on the basis of race in

violation of 42 U.S.C. §§ 3601 *et seq*.

130.    Plaintiffs, the Water Lien Class, and the Escrow Subclass have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. The policy and practice identified above has been in place for several years, and Defendant continues this discriminatory action today. Plaintiffs, the Water Lien Class, and the Escrow Subclass currently suffer, and will continue to suffer, irreparable injury from Defendant's discriminatory actions.

131.    Defendant has maintained these acts, policies, and practices continuously, and they constitute a continuing violation of 42 U.S.C. §§ 3601 *et seq*.

132.    Defendant's discriminatory policy and practice is arbitrary and is not justified by one or more substantial, legitimate, nondiscriminatory interests. To the extent Defendant may claim that its policy and practice is justified by a substantial, legitimate, nondiscriminatory interest, that interest may be achieved by less discriminatory means.

## COUNT TWO
### Race Discrimination Under the Ohio Civil Rights Act
### Ohio Rev. Code Ann. § 4112.02(H)
### All Plaintiffs Against Defendant City of Cleveland

133.    Plaintiffs, on behalf of themselves, the Water Lien Class, and the Escrow Subclass, incorporate by reference the allegations in all preceding paragraphs.

134.    By the actions described above, Defendant has violated the rights of Plaintiffs, the Water Lien Class, and the Escrow Subclass by discriminating on the basis of race in the furnishing of facilities, services, or privileges in connection with the ownership, occupancy, or use of any housing accommodations, in violation of Ohio Rev. Code Ann. § 4112.02(H).

135.    By the actions described above, Defendant has engaged in, and continues to engage in, a policy, pattern, and practice of discrimination against Black residents of Cuyahoga County

due to their race, or the racial composition of their neighborhood, in violation of Ohio Rev. Code Ann. § 4112.02(H).

136. Defendant has intentionally, knowingly, and continuously engaged in the practices described above, with the intent of denying equal housing opportunities to Plaintiffs, the Water Lien Class, and the Escrow Subclass.

**COUNT THREE**
**Violation of Due Process**
**U.S. Constitution, Amendment XIV, 42 U.S.C. § 1983; Ohio Constitution, Article I, § XVI**
**Plaintiff Shepherd against Defendant City of Cleveland**

137. Plaintiff Tiniya Shepherd, on behalf of herself and the Shutoff Class, incorporates by reference the allegations in all preceding paragraphs.

138. The Due Process Clause of the 14th Amendment to the U.S. Constitution prohibits state and local governments from depriving individuals of property interests without due process of the law. U.S. Const. amend. XIV, § 1, cl. 3.

139. The Ohio Constitution provides that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Ohio Const., Art. I, § XVI.

140. 42 U.S.C. § 1983 allows individuals to bring actions against state actors, including municipalities, for deprivations of federal constitutional and statutory rights, including those protected by the 14th Amendment.

141. The above conduct of Defendant has been taken under color of state and local law.

142. Water service in Ohio may be disconnected only for specified reasons, such as nonpayment, tampering, contamination, and refusal to allow access to utility equipment. Ohio Admin. Code § 4901:1-15-27.

143.    This statute confers to Plaintiff Shepherd and the Shutoff Class a property interest in the expectation of water services, protected by the due process provisions of the U.S. and Ohio Constitutions.

144.    Additionally, Cleveland Water may only disconnect water service to customers upon "strict compliance" with the procedures set forth by the amended consent order in *Colegrove*. The consent order provides that the city "has the duty and responsibility to provide water/sewer customers with notice and an opportunity to be heard prior to termination of service, unless the reason for the termination is to prevent emergency waste." Ex. A at App. A, p. 2. The consent order sets forth the procedures for Cleveland Water customers to receive notice and a hearing prior to a deprivation of water service.

145.    Defendant violated the constitutional right of Plaintiff Shepherd and the Shutoff Class to due process. First, Defendant has a policy of failing to provide Plaintiff Shepherd and members of the Shutoff Class with notice reasonably calculated to apprise them of the impending disconnection of their water service and of their opportunity to object before the Water Review Board.

146.    In the alternative, Defendant has failed to adequately train its personnel to provide constitutionally sufficient and meaningful notice. Defendant was deliberately indifferent to the need for improved training on pre-disconnection notice: given the high number of customer complaints and water shutoffs and the low number of hearings conducted each year, Defendant's policymakers knew or should have known that the procedural due process rights of Plaintiff Shepherd and the Shutoff Class were being regularly violated.

147.    The past and continuing acts and conduct of Defendant, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the protected rights of Plaintiff Shepherd and the Shutoff Class.

**COUNT FOUR**
**Violation of Due Process and Equal Protection**
**U.S. Constitution, Amendment XIV, 42 U.S.C. § 1983; Ohio Constitution, Article I, § XVI**
**Plaintiffs Pickett, Johnson, and Montgomery against Defendant City of Cleveland**

148.    Plaintiffs Pickett, Johnson, and Montgomery, on behalf of themselves and the Overbilling Class, incorporate by reference the allegations in all preceding paragraphs.

149.    The Due Process Clause of the 14th Amendment to the U.S. Constitution prohibits state and local governments from depriving individuals of property interests without due process of the law. U.S. Const. amend. XIV, § 1, cl. 3.

150.    The Equal Protection Clause of the 14th Amendment to the U.S. Constitution prohibits state and local governments from denying to any person within their jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. cl. 4.

151.    The Ohio Constitution provides that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Ohio Const., Art. I, § XVI.

152.    42 U.S.C. § 1983 allows individuals to bring actions against state actors, including municipalities, for deprivations of federal constitutional and statutory rights, including those protected by the 14th Amendment.

153.    The above conduct of Defendant has been taken under color of state and local law.

154.    Ohio law provides that, "[f]or the purpose of paying the expenses of conducting and managing the waterworks of a municipal corporation, including operating expenses and the costs of permanent improvements, the director of public services or any other city official or body

36

authorized by charter may assess and collect a water rent or charge of sufficient amount and in such manner as the director, other official, or body determines to be the most equitable from all tenements and premises supplied with water." Ohio Rev. Code Ann. § 743.04.

155.    This statute, requiring water charges to be a "sufficient amount" and assessed and collected in the manner "most equitable" from all tenements and premises, confers to Plaintiffs Pickett, Johnson, and Montgomery and the Overbilling Class a property interest in accurate water bills protected by the due process provisions of the U.S. and Ohio Constitutions.

156.    Plaintiffs Pickett, Johnson, and Montgomery and the Overbilling Class also have a property interest in the financial payments made to Cleveland Water for water services, protected by the due process provisions of the U.S. and Ohio Constitutions.

157.    Defendant violated the constitutional rights of Plaintiffs Pickett, Montgomery, and Johnson and the Overbilling Class to due process and equal protection. First, Defendant has a policy of erroneously and arbitrarily overbilling its customers, making them financially responsible for inaccurate and illegitimate charges. On information and belief, this policy has caused many individuals, including Plaintiffs Pickett, Johnson, and Montgomery and members of the Overbilling Class, to overpay the City of Cleveland for water services.

158.    Defendant further violated the constitutional right of Plaintiffs Pickett, Johnson, and Montgomery and the Overbilling Class to due process by failing to give them an opportunity to contest their erroneously high bills through a hearing before the Water Review Board.

159.    The past and continuing acts and conduct of Defendant, described above, were and are intentional, and have been carried out with malice and/or reckless indifference to the protected rights of Plaintiffs Pickett, Johnson, Montgomery and the Overbilling Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members pray for relief as follows:

a.    Certification of the case as a class action on behalf of each proposed class and subclass;

b.    Designation of Plaintiffs as representatives of the Water Lien Class;

c.    Designation of Plaintiff Tiniya Shepherd as representative of the Escrow Subclass and the Shutoff Class;

d.    Designation of Plaintiffs Pickett, Johnson, and Montgomery as representatives of the Overbilling Class;

e.    Designation of Plaintiffs' counsel of record as Class Counsel;

f.    Declaration that the actions of Defendant described above constitute discrimination on the basis of race in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, and Ohio Rev. Code Ann. § 4112.02(H);

g.    Declaration that the actions of Defendant described above constitute a violation of Plaintiffs' rights to procedural due process and equal protection under the U.S. Constitution, Amendment XIV, brought under 42 U.S.C. § 1983, and the Ohio Constitution, Article I, § XVI;

h.    Permanent injunction prohibiting Defendant from engaging in the illegal discriminatory conduct described herein and requiring Defendant to take all steps necessary to remedy the effect of such conduct and prevent similar occurrences in the future;

i.    Compensatory damages, in an amount to be determined at trial, to fully compensate Plaintiffs for injuries including, but not limited to, monetary loss, humiliation, embarrassment, emotional distress, the deprivation of statutory and constitutional rights, and other damages they have suffered as a result of Defendant's actions described above;

j.    Punitive damages in an amount to be determined at trial, which would punish Defendant for its intentional, malicious, willful, callous, wanton, and reckless disregard for Plaintiffs' rights and effectively deter Defendant from engaging in similar conduct in the future;

k.    Reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §§ 1988 and 3613(c)(2) and Ohio Rev. Code Ann. § 4112.051(D);

l.    Prejudgment and post-judgment interest; and

m.    Such other relief as the Court deems appropriate and just.

## JURY DEMAND

Plaintiffs demand a trial by jury in this action.

Dated: Cleveland, Ohio
December 18, 2019

Respectfully submitted,

By: */s/ Rebecca Maurer*
Rebecca A. Maurer (0095401)
**MAURER LAW LLC**
6815 Euclid Avenue
Cleveland, Ohio 44103
Tel.: (216) 242-6672
Fax: (216) 242-6691
rebecca@maurerlawllc.com

**NAACP LEGAL DEFENSE**
**AND EDUCATIONAL FUND, INC.**
Coty Montag*
Jennifer A. Holmes*
Jason Bailey*
700 14th Street NW, Suite 600
Washington, DC 20005
Tel.: (202) 682-1300
cmontag@naacpldf.org
jholmes@naacpldf.org
jbailey@naacpldf.org

*\*Pro hac vice* motions forthcoming

*Attorneys for Plaintiffs and the Putative Classes*