IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ALBERT PICKETT, JR., KEYONNA JOHNSON, JAROME MONTGOMERY, ODESSA PARKS, and TINIYA SHEPHERD (f/k/a/ TINIYA HALL), on behalf of themselves and all other similarly situated, | ) ) ) ) ) ) | CASE NO. 1:19-cv-02911-SO  JUDGE SOLOMON OLIVER, JR. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF CLEVELAND, | ) ) | |
| Defendants. | ) | |

---

## DEFENDANT CITY OF CLEVELAND'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

---

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant City of Cleveland, by and through counsel, moves to dismiss Plaintiffs' Class Action Complaint for failure to state a claim upon which relief can be granted. The grounds for the motion are set forth in the brief in support attached hereto.

Respectfully submitted,

*/s/ Michael J. Ruttinger*
Robert J. Hanna (0037230)
Sanford E. Watson (0040862)
Michael J. Ruttinger (0083850)
Christine M. Snyder (0086788)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:      robert.hanna@tuckerellis.com
            sanford.watson@tuckerellis.com
            michael.ruttinger@tuckerellis.com
            christine.snyder@tuckerellis.com

Barbara A. Langhenry (0038838)
Director of Law
City of Cleveland, Ohio
Department of Law
601 Lakeside Avenue, Room 106
Cleveland, OH 44114-1077
Telephone:  216.664.2800
Facsimile:  216.420.8560
E-mail:      blanghenry@city.cleveland.oh.us

*Attorneys for Defendant City of Cleveland*

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ALBERT PICKETT, JR., KEYONNA JOHNSON, JAROME MONTGOMERY, ODESSA PARKS, and TINIYA SHEPHERD (f/k/a/ TINIYA HALL), on behalf of themselves and all other similarly situated, | ) ) ) ) ) ) | CASE NO. 1:19-cv-02911-SO  JUDGE SOLOMON OLIVER, JR. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF CLEVELAND, | ) ) | |
| Defendants. | ) | |

---

**BRIEF IN SUPPORT OF DEFENDANT CITY OF CLEVELAND'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

---

Robert J. Hanna (0037230)
Sanford E. Watson (0040862)
Michael J. Ruttinger (0083850)
Christine M. Snyder (0086788)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:      robert.hanna@tuckerellis.com
             sanford.watson@tuckerellis.com
             michael.ruttinger@tuckerellis.com
             christine.snyder@tuckerellis.com

Barbara A. Langhenry (0038838)
Director of Law
City of Cleveland, Ohio
Department of Law
601 Lakeside Avenue, Room 106
Cleveland, OH 44114-1077
Telephone:  216.664.2800
Facsimile:  216.420.8560
E-mail: blanghenry@city.cleveland.oh.us

*Attorneys for Defendant City of Cleveland*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iv

STATEMENT OF THE ISSUES ..........................................................................................1

SUMMARY OF THE ARGUMENT .....................................................................................1

I.       Introduction ..............................................................................................2

II.      Background ................................................................................................4

         A.      Cleveland Water is a division of the City of Cleveland established by the Cleveland Codified Ordinances. ...................................4

         B.      Cleveland Water's race-neutral policies and procedures are authorized by Ohio law and provide residential homeowners and tenants procedural options for challenging a disconnection notice...................................................................................5

         C.      Background on Plaintiffs' alleged class claims...........................................6

III.     Law and Argument....................................................................................8

         A.      This Court should dismiss the Federal Fair Housing Act claim (Count I) because Plaintiffs cannot make the "robust causality" showing needed to state a disparate-impact claim.....................8

         B.      This Court should dismiss Plaintiffs' claim for race discrimination under the Ohio Civil Rights Act (Count II) as insufficiently pleaded. .............................................................................13

         C.      This Court should dismiss Plaintiffs' Due Process claims (Count III) on behalf of the "Shutoff Class" because Plaintiffs do not allege a constitutionally protected property interest. .....................14

         D.      This Court should dismiss Plaintiffs' Due Process and Equal Protection claims (Count IV) because they do not allege a constitutionally protected property interest on behalf of the "Overbilling Class.".............................................................................17

         E.      Ohio R.C. § 2744.02 requires dismissal of Plaintiffs' claim for money damages brought under Ohio's Fair Housing Act. ..................19

IV.    Conclusion ...................................................................................................20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F) .............................................22

CERTIFICATE OF SERVICE .......................................................................................23

# TABLE OF AUTHORITIES

## CASES

*1946 St. Clair Corp. v. City of Cleveland*,
    550 N.E.2d 456 (Ohio 1990) ........................................................................... 18

*Alexander v. Youngstown Board of Education*,
    454 F. Supp. 985 (N.D. Ohio 1978) ................................................................ 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 13

*Board of Regents v. Roth*,
    408 U.S. 564 (1972) ......................................................................................... 15

*Chun v. New York City Dept. of Environmental Protection*,
    989 F. Supp. 494 (S.D.N.Y. 1998) ................................................................. 18

*City of Los Angeles v. Bank of Am. Corp.*,
    691 F. App'x 464 (9th Cir. 2017) .................................................................... 10

*Colegrove v. City of Cleveland*,
    No. 74-1007 (N.D. Ohio June 25, 1983) ..................................................... 5, 16

*Eva v. Midwest Nat'l Mortgage Bank, Inc.*,
    143 F. Supp. 2d 862 (N.D. Ohio 2001) ........................................................... 14

*Howard v. City of Beavercreek*,
    108 F. Supp. 2d 866 (S.D. Ohio 2000) ....................................................... 2, 19

*Kamal v. City of Toledo Dep't of Public Utilities*,
    No. 3:13 CV 574, 2014 WL 1493136 (N.D. Ohio Apr. 14, 2014) ............ 15, 16

*Mansfield Apartment Owners Ass'n v. City of Mansfield*,
    988 F.2d 1469 (6th Cir. 1993) ...................................................................... 15, 18

*McReynolds v. Merrill Lynch & Co., Inc.*,
    694 F.3d 873 (7th Cir. 2012) .......................................................................... 13

*Metz v. Herbert*,
    243 F. Supp. 3d 929 (M.D. Tenn. Mar. 20, 2017) ........................................ 1, 9

*Midkiff v. Adams County Regional Water District*,
    409 F.3d 758 (6th Cir. 2005) ................................................................... passim

*Ohio Civil Rights Comm'n v. Hartlett,*
    724 N.E. 2d 1242 (Ohio Ct. App. 1999) ........................................................ 14

*Oviedo Town Center II, L.L.L.P. v. City of Oviedo, Florida,*
    759 F. App'x 828 (11th Cir. 2018) ................................................................. 9

*Purisch v. Tenn. Tech. Univ.,*
    76 F.3d 1414 (6th Cir. 1996) ......................................................................... 18

*State ex rel. Ohio Republican Party v. FitzGerald,*
    47 N.E.3d 124 (Ohio 2015) ............................................................................. 6

*State v. Anderson,*
    68 N.E.3d 790 (Ohio 2016) ......................................................................... 4, 14

*Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.,*
    135 S. Ct. 2507 (2015) ........................................................................... passim

*Youngblood v. Board of Commissioners of Mahoning County,*
    No. 4:19CV231, 2019 WL 4256855  (N.D. Ohio Sept. 9, 2019) .................................... 13

## Statutes and Ordinances

42 U.S.C. § 1983 ..................................................................................... passim

42 U.S.C. § 3604(a) ................................................................................1, 8, 11

42 U.S.C. § 3601, *et seq.* .............................................................................. 6

Cleveland Codified Ordinances § 129.05 ............................................................. 4

Cleveland Codified Ordinances § 535.04 ............................................................. 4

Cleveland Codified Ordinances § 535.06 ......................................................... 4, 16

Cleveland Codified Ordinances § 535.14 ............................................................. 5

Cleveland Codified Ordinances § 535.16(a)(b) ...................................................... 5

Ohio Administrative Code § 4901:1-157 .......................................................... 15, 16

Ohio R.C. § 535.16 .................................................................................... 5

Ohio R.C. § 536.06(r) ................................................................................. 5

Ohio R.C. § 743.04 ................................................................................ 17, 18

Ohio R.C. § 2744.01(G)(2)(c) ................................................................................................. 19

Ohio R.C. § 2744.02 ..................................................................................................... 2, 8, 19

Ohio R.C. § 4112.02(H) ............................................................................................... passim

Ohio R.C. § 4112.99 ............................................................................................................. 19

Ohio R.C. § 4905.22 ............................................................................................................. 16

## STATEMENT OF THE ISSUES

Whether Plaintiffs' claims for race discrimination under the Federal and Ohio Fair Housing Acts, 42 U.S.C. § 3604(a) and Ohio R.C. § 4112.02(H), on behalf of the "Water Lien Class" (Counts I & II), for deprivation of due process on behalf of the "Shutoff Class" (Count III), and for deprivation of due process and violation of the Equal Protection Clause of the United States Constitution on behalf of the "Overbilling Class" (Count IV), fail as a matter of law and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF THE ARGUMENT

Plaintiffs seek to hold the City of Cleveland liable based on an alleged disparate impact that its Division of Water ("Cleveland Water") policies have on Black residents, even though those policies are race-neutral and Plaintiffs offer no factual allegations to the contrary. They likewise seek to certify classes based on constitutional challenges to the City's disconnection and billing practices, even though they cannot identify a requisite property interest needed to invoke the Due Process Clause of the United States or Ohio Constitutions.

Plaintiffs' Federal and State Fair Housing Act claims (Counts I and II) should be dismissed because Plaintiffs do not allege the "robust causal connection" needed to establish disparate-impact liability based on Cleveland Water's race-neutral policies. *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2523 (2015). Plaintiffs' attempt to use Census statistics to support their claims fails because "disparate impact liability . . . does not simply attach any time there is an alleged statistical disparity." *See Metz v. Herbert*, 243 F. Supp. 3d 929, 937-38 (M.D. Tenn. Mar. 20, 2017).

Plaintiffs' constitutional challenges to Cleveland Water's policies likewise fail because Plaintiffs do not allege "property interests" that can be addressed under the Due Process Clause of the United States or the Due Course of Law Clause of the Ohio Constitution, which are coextensive. In Count III, Plaintiffs seek to certify claims on behalf of a "Shutoff Class" that claims an "expectation of water services," but no provision of Ohio law brings a consumer's expectation of water services within the realm of constitutionally protected property interests. *See Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 764 (6th Cir. 2005). The same is true for the interest in "accurate water bills" alleged on behalf of the "Overbilling Class" in Count IV. (*See* Compl. ¶ 155). Nor have Plaintiffs alleged any basis for applying the Equal Protection Clause because Plaintiffs do not allege that inaccurate water bills are a product of racial discrimination or implicate a "fundamental right" protected by the Fourteenth Amendment of the United States Constitution. *See Midkiff*, 409 F.3d at 770.

Finally, even if some of Plaintiffs claims survive a motion to dismiss, this Court should enter an order precluding Plaintiffs from recovering money damages for any alleged violation of the Ohio Fair Housing Act, Ohio R.C. § 4112.02(H) because Ohio R.C. § 2744.02 immunizes political subdivisions from damages claims stemming from actions taken in connection with a government or proprietary function. *See Howard v. City of Beavercreek*, 108 F. Supp. 2d 866, 870 (S.D. Ohio 2000) (applying R.C. § 2744.02 immunity to claims brought under R.C. § 4112.02(H)).

## I.    **INTRODUCTION**

Plaintiffs' lawsuit rashly casts the City of Cleveland as liable for the "disparate impact" that its Division of Water ("Cleveland Water") policies have on Black residents—specifically a rise in foreclosures in majority-Black communities—even though Cleveland Water's policies are

race-neutral, reasonable, and nondiscriminatory. Plaintiffs' otherwise laudable concern with inequality leads them to wrongly point the finger at Cleveland Water, faulting it for a "draconian" approach to overdue water bills, including "unaffordable and often erroneous bills that lead to rampant service shutoffs" and a "policy of placing liens on properties with overdue water bills." (Compl. ¶ 1.) Yet, Plaintiffs do not, and cannot, allege *any* facts to connect Cleveland Water's policies to the alleged rise in foreclosures.

In claiming that Cleveland Water's practices disproportionately impact Black residents, Plaintiffs ignore that the Supreme Court of the United States has called "disparate impact" claims "a novel theory of liability" that require a "robust causality" showing on the pleadings. *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2522-23 (2015). Plaintiffs who do not "allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* That is precisely the problem with Plaintiffs' claims. Plaintiffs do not even attempt to "connect the dots" between Cleveland Water's policies and foreclosure on Black residents' homes, which may be due to myriad unrelated reasons, including failure to pay property taxes and other delinquencies. Correlation is not causation; the fact that there is *correlation* between residents who cannot afford their water bills and residents whose homes are in foreclosure does not mean that Cleveland Water's race-neutral policies *cause* foreclosures, period—let alone that Cleveland Water discriminates against Black residents.

Plaintiffs' constitutional challenges to Cleveland Water's policies also fail on the face of the Complaint. Claims for violation of the United States Constitution's Due Process Clause and

the Ohio Constitution's Due Course of Law Clause, which are coextensive,[1] require Plaintiffs to establish a protected property interest that cannot be taken away without appropriate procedural protections. Plaintiffs, however, fail to allege facts sufficient to show a constitutionally protected interest sufficient to support their claims in the first place. Nor have they sufficiently alleged that Cleveland Water's policies violate substantive due process rights or the United States Constitution's Equal Protection Clause, which requires a showing "that a state actor intentionally discriminated against the plaintiff because of membership in a protected class or burdened a fundamental right," neither of which Plaintiffs can prove as a matter of law. *See Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 770 (6th Cir. 2005). For all these reasons, Plaintiffs' Complaint should be dismissed.

## II.   **BACKGROUND**

### A.   **Cleveland Water is a division of the City of Cleveland established by the Cleveland Codified Ordinances.**

Cleveland Water is a division established within the Department of Public Utilities of the City of Cleveland, controlled and administered by the Commissioner of Water and subject to the provisions of the Charter and Ordinances of the City. Cleveland Codified Ordinances § 129.05. As such, the Cleveland Codified Ordinances enacted by the City Council—specifically, Chapter 535—govern Cleveland Water's "Water Rates and Billings." Section 535.04, for example, codifies the permissible rates to be charged by Cleveland Water, and § 535.06 addresses permissible fees and charges. The code also prescribes Cleveland Water's authority to take steps towards collecting

---

[1] The Ohio Supreme Court interprets "the Ohio Due Course of Law Clause, Article I, Section 16, as coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *State v. Anderson*, 68 N.E.3d 790, 795 (Ohio 2016).

delinquent accounts and, if necessary, terminating service for failure to pay past-due balances. *See* Cleveland Codified Ordinances §§ 535.14, 535.16.

> **B.     Cleveland Water's race-neutral policies and procedures are authorized by the Cleveland Codified Ordinances and provide residential homeowners and tenants procedural options for challenging a disconnection notice.**

The Cleveland Codified Ordinances permit Cleveland Water to disconnect service, if necessary, when customers continue to fail to pay past-due balances. *See, e.g.*, Cleveland Codified Ordinances §§ 535.06(v) (providing that "[f]ailure to make any payment under an arranged payment plan when due . . . may lead to termination of water service"); 535.16 (authorizing the disconnection of  water services "at any premises where any water or waste water bill remains unpaid after the date payment is due."). Before Cleveland Water disconnects any service, however, it must "cause a notice of delinquency to be mailed to the account holder." Cleveland Codified Ordinances § 535.14. If water services remain unpaid, Cleveland Water may eventually disconnect water service, subject to several conditions:

- Cleveland Water "shall send to the account holder a notice of termination of service at least fifteen (15) days prior to such termination; and

- Where Cleveland Water "has reason to believe that the premises where service is to be terminated is occupied by residential tenants," it "shall provide at least thirty (30) days' notice to any such tenants by mail or by posting a notice of termination on all accessible building entrances and, where possible, at the door of each dwelling unit."

Cleveland Codified Ordinances § 535.16(a) & (b).

In addition to the above procedures, Cleveland Water may disconnect service upon compliance with the procedures set forth by the amended consent order in *Colegrove v. City of Cleveland*, No. 74-1007 (N.D. Ohio June 25, 1983), which was attached as Exhibit A to Plaintiffs'

Class Action Complaint. The *Colegrove* Order was the genesis of the Water Review Board, which provides an opportunity for residents who have received a disconnection notice to dispute the reasons for termination of their service. As explained on Cleveland Water's public-facing website, Water Review Board hearings are open to customers who meet the following eligibility criteria:

- The property must be a residential property AND you must be the property owner OR a resident with an approved Cleveland Water Tenant Deposit Agreement. Multi-family dwellings with four (4) units or less are eligible for Water Review Board. Multi-family dwellings with more than four (4) units are considered commercial and are not eligible.

- If you are a tenant, you will need to submit proof of residency for the disputed period (such as an electric, gas, or cable bill) with your written or faxed request.

- You must have received a shut-off/termination notice. This notice is sent via U.S. Postal Service.

Cleveland Water Department - Water Review Board, http://www.clevelandwater.com/water-review-board (last accessed Feb. 5, 2020).[2]

C.      **Background on Plaintiffs' alleged class claims**

Plaintiffs group their allegations against Cleveland Water into claims on behalf of three alleged classes of Cleveland Water customers and one sub-class. First, Plaintiffs raise race discrimination claims under both the Federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq*., and the Ohio Fair Housing Act, R.C. § 4112.02(H), on behalf of a "Water Lien Class" and an

---

[2] Federal Rule of Civil Procedure 201 authorizes this Court to take judicial notice of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Internet website content of a political subdivision's policies is a subject appropriate for judicial notice under this rule. *See State ex rel. Ohio Republican Party v. FitzGerald*, 47 N.E.3d 124, 128 (Ohio 2015) (taking judicial notice of information posted on the Cuyahoga County government website).

"Escrow Subclass." In both instances, Plaintiffs purport to limit these classes to Black homeowners

or Black residents in Cuyahoga County:

- Plaintiffs define the "Water Lien Class" as "[a] class of all Black homeowners or
  residents in Cuyahoga County who have been obligated, within the last two years,
  to pay a debt secured by their property stemming from amounts originally owed to
  Cleveland Water." (Compl. ¶ 115(a).)

- Plaintiffs define the "Escrow Subclass" as "[a] subclass of all Black homeowners
  or residents in Cuyahoga County who have been obligated, within the last two
  years, to pay increased mortgage escrow payments as a result of their mortgagee or
  mortgage service satisfying a debt secured by the property stemming from amounts
  originally owed to Cleveland Water." (*Id*. ¶ 115(b).)

Specifically, Plaintiffs challenge Cleveland Water's practice of using "water liens" to secure

unpaid debts owed for past-due water bills. Notably, Plaintiffs do not challenge Cleveland Water's

*authority* to place water liens under Ohio law, but only the legality of the practice in light of the

disparate impact it allegedly has on Black residents, whom they claim are placed at higher risk of

foreclosure by the practice.

Plaintiffs also allege claims on behalf of a purported "Shutoff Class" and "Overbilling

Class," in which they challenge Cleveland Water's service-disconnection and billing-dispute

policies as unconstitutional. These claims, however, do not include race discrimination allegations:

- Plaintiffs define the "Shutoff Class" as "[a] class of all persons who, within the last
  two years, have had their water service disconnected by Cleveland Water and did
  not receive advance written notice of the shutoff or their right to request a hearing
  to dispute the impending disconnection." Plaintiffs limit this class to "exclude[] any
  person whose water service was disconnected without notice to prevent emergency
  waste." (*Id*. ¶ 115(c).)

- Plaintiffs define the "Overbilling Class" as "[a] class of all persons who, within the
  last two years, have been overbilled for water services by Cleveland water and did
  not receive an opportunity to contest their bill through a hearing." (*Id*. ¶ 115(d).)

All of the named Plaintiffs allege that they are members of the Water Lien Class. (Compl. ¶ 116.) Plaintiffs Albert Pickett, Keyonna Johnson, and Jarome Montgomery allege that they are members of the Overbilling Class. (*Id.* ¶ 119.) And Plaintiff Tiniya Shepherd alleges that she is the sole representative both for the Escrow Subclass and for the Shutoff Class. (*Id.* ¶ 117-18.)

### III.     LAW AND ARGUMENT

The claims raised in Plaintiffs' Class Action Complaint can be divided into two categories: (1) allegations that Cleveland Water violated the Federal and Ohio Fair Housing Acts because its use of "water liens" to secure unpaid balances disproportionately places Black homeowners at risk of foreclosure; and (2) race-neutral claims raised under the Due Process and Equal Protection clauses of the United States and the Due Course of Law clause of the Ohio Constitution, in which Plaintiffs allege that Cleveland Water's disconnection and billing practices are unconstitutional deprivations of due process. Each of these claims fail on the pleadings for the reasons detailed below, requiring dismissal of Plaintiffs' Complaint. If, however, Plaintiffs' claims survive then this Court should at least dismiss Plaintiffs' request for money damages under Ohio's Fair Housing Act because the City of Cleveland is immune from those damages under Ohio R.C. § 2744.02.

> **A.     This Court should dismiss the Federal Fair Housing Act claim (Count I) because Plaintiffs cannot make the "robust causality" showing needed to state a disparate-impact claim.**

Plaintiffs premise their claim for violation of the Federal Fair Housing Act on a "novel theory" of disparate-impact liability, which the Supreme Court strictly limited in *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S.Ct. 2507 (2015). Specifically, Plaintiffs claim that Cleveland Water violated 42 U.S.C. § 3604(a), which prohibits actions that "otherwise make unavailable or deny . . . a dwelling to any person because of race."

According to Plaintiffs, Cleveland Water's "discriminatory policy and practice of placing water liens on residents' properties causes Black residents of Cuyahoga County to suffer an increased risk of foreclosure and eviction relative to white residents." (Compl. ¶ 125.) In support of this claim, Plaintiffs rely on demographic statistics drawn from publicly available United States Census records, which compare, for example, the percentage of Black residents who reside in Cuyahoga County against the percentage of Black residents who live in a Census block that contains a property with a water lien. (*See* Compl. ¶ 15.)

The Supreme Court has cautioned *against* imposing disparate-impact liability "based solely on a statistical disparity":

> [D]isparate-impact liability has always been properly limited in key respects that avoid the **serious constitutional questions that might arise under the FHA, for instance, if such liability were imposed based solely on a showing of a statistical disparity.**

*Texas Dept. of Housing*, 135 S. Ct. at 2522 (emphasis added). To combat this risk, the Supreme Court clarified that any plaintiff seeking to impose disparate-impact liability based on such statistics carries a heightened burden on the pleadings: "a disparate-impact claim that relies on a statistical disparity *must fail* if the plaintiff cannot point to a defendant's policy or policies *causing* that disparity. A robust causality requirement ensures that '[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable *for racial disparities they did not create*." *Id.* at 2523 (emphasis added).

The chief lesson from *Texas Dept. of Housing* is that an alleged statistical disparity is not a sufficient basis for a disparate-impact claim. *See, e.g.*, *Metz v. Herbert*, 243 F. Supp. 3d 929, 937-38 (M.D. Tenn. Mar. 20, 2017) ("*Texas* explains that disparate impact liability under the FHA does not simply attach any time there is an alleged statistical disparity . . . ."); *Oviedo Town Center*

*II, L.L.L.P. v. City of Oviedo, Florida*, 759 F. App'x 828, 834-35 (11th Cir. 2018) ("Even before the Supreme Court spoke to this question, this Court had arrived at similar conclusions, entirely consistent with Inclusive Communities, about the need for a relevant statistical showing in order to support a disparate-impact claim under the FHA.").

Accordingly, Plaintiffs pursuing a disparate-impact theory must show *more* than a disparity; they must show causation. Making this connection between statistics and causation is especially important when plaintiffs challenge a "facially-neutral policy," as they do here. *See City of Los Angeles v. Bank of Am. Corp.*, 691 F. App'x 464, 465 (9th Cir. 2017) ("[T]he City showed a statistical racial disparity," but "fell short, however, in failing to show a 'robust' connection between this disparity and any . . . facially-neutral policy."). And it is a connection that these Plaintiffs fail to make.

Plaintiffs' attempt to use statistics alone to prove a disparate impact is reminiscent of the efforts rejected in *Oviedo*, *Reyes*, and *City of Los Angeles*. Drawing from data reported by the United States Census Bureau, Plaintiffs note that of the approximately 1.3 million persons who reside in Cuyahoga County, "[a]pproximately 30.5% of the county's population is Black; nearly 60% is white; and close to 6% is Latinx." (Compl. ¶ 62.) They then compare those demographics against the alleged ratio of water liens placed in majority-Black Census blocks to majority-White Census blocks. These ratios range from a "low" in 2016, where "of water liens placed by Cleveland Water in Cuyahoga County, 55.2% were placed in majority-Black Census blocks, while only 27.9% were placed in majority-white Census blocks" (*id.* ¶ 67(c)) to a "high" in 2017, where "78.9% were placed in majority-Black Census blocks, while only 22.6% were placed in majority-

white Census blocks" (*id.* ¶ 67(d).)[3] Plaintiffs, however, made no effort to connect these statistics to *anything* to do with causation. For example, they did not attempt to confirm the race of any of the persons actually affected *within* these Census blocks, and therefore cannot rule out the possibility that water liens were applied evenly to Black and white households within those blocks. Nor did they make any effort to rule out the possibility that disparities are related to income levels as opposed to race within these Census blocks. Instead, Plaintiffs merely allege (with no statistical support) that "[t]he disparate impact of Cleveland [W]ater's water lien policy on Black residents is independent of those residents' income." (Compl. ¶ 71.)

Worse, Plaintiffs completely fail to "connect the dots" between Cleveland Water's lien policies and the causal connection needed to prove a violation of the Fair Housing Act. Under the Federal FHA, liability arises against persons whose actions "otherwise make unavailable or deny . . . a dwelling to any person because of race." 42 U.S.C. § 3604(a). The placing of a water lien does not necessarily deprive a person of housing, and there is no allegation in the Complaint that Cleveland Water has *ever* sought to foreclose on a person based on a water lien. Water liens merely secure an unpaid debt. The only attempt at an appearance of a causal connection between water liens and foreclosures in Plaintiffs' Complaint is the following unsupported assertion:

> From 2014 to 2018, Cleveland Water placed more than 11,000 water liens on properties in Cuyahoga County. During that same period, nearly 6,000 residents found themselves in tax foreclosure. On

---

[3] Plaintiffs claim to rely on "publicly available data" for these figures, but do not identify the source of these estimates anywhere in the Complaint. The lack of substantiation calls these numbers into doubt. These numbers also appear to be inaccurate on their face. For example, combining the percentages alleged by Plaintiffs accounts for only 83.1% of liens placed in 2016, but for 101.5% of liens placed in 2017.

> information and belief, many of these foreclosures were the result
> of unpaid water debt.

Such a bare "on information and belief" allegation does not satisfy the "robust causality" showing required *on the pleadings* by the Supreme Court. *Texas Dept. of* Housing, 135 S. Ct. at 2522-23. Plaintiffs apparently did nothing to rule out any other—and much more likely—causes of foreclosure, including delinquent mortgage payments or property tax payments. Allowing Plaintiffs to survive a motion to dismiss on statistics alone, with no causation component, conflicts directly with the Supreme Court's warning that "disparate-impact liability has always been properly limited in key respects that avoid the serious constitutional questions that might arise under the FHA, for instance, *if such liability were imposed based solely on a showing of statistical disparity.*" *Id.* (emphasis added).

Even if Plaintiffs *did* allege a causal connection, Census block data (like that relied on by Plaintiffs) remains an inherently unreliable basis for alleging any causal relationship because Census blocks are a poor proxy for population. In *Alexander v. Youngstown Board of Education*, 454 F. Supp. 985 (N.D. Ohio 1978), the Northern District of Ohio criticized the use of Census block data for drawing conclusions about the racial composition of the Youngstown public schools, noting that Census blocks and demographic maps "do not show the density of the population in such blocks." *Id.* at 990. Consequently, the court emphasized that the "limitation on the utility of these census maps must be recognized since an area indicated to be 50% to 90% Black residentially may in fact contain few residents." *Id.* at 990-91. As such, Plaintiffs fail to meet the "robust causality" showing required by Plaintiffs on the pleadings, which necessitates a more reliable source for making a causal connection between Cleveland Water's lien policies and the "disparate impact" Plaintiffs allege.

**B.      This Court should dismiss Plaintiffs' claim for race discrimination under the Ohio Civil Rights Act (Count II) as insufficiently pleaded.**

Plaintiffs claim that Cleveland Water "intentionally, knowingly, and continuously engaged in" a "policy, pattern, and practice of discrimination against Black residents" in violation of Ohio's Civil Rights Act (Compl. ¶¶ 135-36), but this Court should dismiss that assertion as the very model of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that "do not suffice" to state a claim under Federal Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These allegations are spurious at best, as nowhere in the Complaint do Plaintiffs allege *any* factual basis for claiming that Cleveland Water knew—much less *intended*— that its water lien policy may disproportionately affect Black residents.

The oft-cited *Iqbal* decision has rarely been so apt a comparison, since it too was rooted in unsupported claims of "invidious discrimination." *Id.* at 676. The Supreme Court explained that a plaintiff alleging a policy of discrimination "must plead sufficient factual matter to show that [the defendant] adopted and implemented [the] policies at issue not for a neutral . . . reason but for the purpose of discriminating on account of race, religion, or national origin." *Id.* at 677. Plaintiffs do not. Indeed, numerous courts—including those within this district—have concluded that disparate-impact allegations, alone, are legally insufficient to support allegations of *intentional* racial discrimination. *See, e.g.*, *Youngblood v. Board of Commissioners of Mahoning County*, No. 4:19CV231, 2019 WL 4256855, *5 (N.D. Ohio Sept. 9, 2019) ("While she makes passing references to 'race discrimination' and 'racial identity,' Youngblood does not allege (or set forth factual allegations that would support a conclusory allegation) that defendants acted with a discriminatory intent or purpose, nor can the Court infer such intent or purpose merely from the allege disparate impact."); *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir.

13

2012) ("Applying [*Iqbal*], the allegations that Merrill Lynch knew that the production-credit system had a disparate impact on black brokers are legally insufficient. Instead, the complaint must allege enough factual content to support an inference that *the retention program itself* was adopted *because of* its adverse effects on black brokers.") (emphasis in original).[4]

Nor can Plaintiffs sustain their claim for violation of Ohio R.C. § 4112.02(H) based on disparate-impact allegations for the same reasons identified with respect to Plaintiffs' Federal FHA claim. Section 4112.02(H) of the Ohio Civil Rights Act runs parallel to the Federal FHA and it is well established that courts evaluating Ohio Fair Housing Act claims under § 4112.02(H)(1) "may rely upon the federal case law under the FHA to resolve [motions to dismiss] as [they] relate[] to Plaintiffs' claims under Ohio's equivalent fair housing statute in § 4112." *Eva v. Midwest Nat'l Mortgage Bank, Inc.*, 143 F. Supp. 2d 862, 890-91 (N.D. Ohio 2001).

C.    **This Court should dismiss Plaintiffs' Due Process claims (Count III) on behalf of the "Shutoff Class" because Plaintiffs do not allege a constitutionally protected property interest.**

Plaintiffs' third cause of action, a constitutional challenge against Cleveland Water's disconnection policies brought under 42 U.S.C. § 1983 on behalf of the "Shutoff Class," fails because Plaintiffs do not—and cannot—allege a protected "property interest" sufficient to support

---

[4] Plaintiffs have not pleaded a "disparate impact" theory under the Ohio Fair Housing Act, as they have with the Federal Fair Housing Act. Nor could they. Ohio courts interpreting R.C. Chapter 4112 "have looked to analogous federal statutes and case law for guidance," treating the two schemes the same. *Ohio Civil Rights Comm'n v. Hartlett*, 724 N.E. 2d 1242, 1244 (Ohio Ct. App. 1999); *see also Eva v. Midwest Nat'l Mortgage Bank, Inc.*, 143 F. Supp. 2d 862, 890-91 (N.D. Ohio 2001). Thus, the fact that Plaintiffs cannot meet the "robust causality requirement" under the Federal FHA would equally requires dismissal of an Ohio claim.

14

a due process claim. The requirements to allege a due process claim under the United States and Ohio Constitutions are the same. *State v. Anderson*, 68 N.E.3d 790, 795 (Ohio 2016).

The Sixth Circuit has held that "[i]n order for plaintiffs to demand due process protection under the Fourteenth Amendment, they must possess a constitutionally protected liberty or property interest in continued water service." *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993). This in turn requires an examination of Ohio law. To establish a protected property interest in a government service, "a plaintiff must show a 'legitimate claim of entitlement' to that service; an 'abstract need or desire' or a 'unilateral expectation' is insufficient." *Midkiff*, 409 F.3d at 762. *See also Kamal v. City of Toledo Dep't of Public Utilities*, No. 3:13 CV 574, 2014 WL 1493136, *3 (N.D. Ohio Apr. 14, 2014) ("In order to establish a 'constitutionally recognized property interest in the benefit of water service,' Plaintiffs must have more than an 'abstract need', 'desire', or 'unilateral expectation' for water service."). As the Supreme Court held in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), a legitimate claim of entitlement must stem from some independent source of law:

> **Property interests** . . . are not created by the Constitution. Rather, they **are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law**—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* (emphases added). The burden therefore falls on Plaintiffs to allege an independent basis in Ohio law for an "entitlement" to uninterrupted water service.

Plaintiffs allege a "property interest in the expectation of water services," citing a provision of the Ohio Administrative Code § 4901:1-15-27, which—ironically—covers disconnection procedures. (Compl. ¶ 142-43.) Section 4901:1-15-27 cannot support an unqualified "expectation

of water services" because it expressly provides for "[d]isconnection of service for nonpayment," so long as that disconnection "not occur prior to fourteen days after the due date" for the bill.[5] There is no reading of § 4901:1-15-27 that supports an unqualified expectation of water services when bills go unpaid. The Northern District of Ohio rejected a similar property-interest-in-water-service argument in *Kamal v. City of Toledo, Dept. of Public Utilities*, 2014 WL 1493136, where the court rejected an argument (not even pleaded here) that the Ohio Revised Code "create[s] a protectable right for all citizens to have water service that cannot be extinguished 'at will' or without 'just cause.'" *Id.* at *5 (concluding that R.C. § 4905.22, which "instructs that a municipality shall 'furnish and provide' utilities and any charges therefor shall be 'reasonable' . . . does not create the necessary property interest in water services.").

The statutory provisions most relevant to Cleveland Water's billing practices—the Cleveland Codified Ordinances—*reinforce* that Plaintiffs do not have a "legitimate expectation" or "entitlement" to water service when they fail timely to pay their bills. Section 536.06(r) of the Ordinances, which governs "Fees and Charges" associated with water rates, specifies that "[f]ailure to make any payment under an arranged payment plan when due shall cause the total unpaid balance to become payable on demand *and may lead to termination of water service*." *Id.* (emphasis added). Thus, although the Ordinances likewise set forth procedures for disconnection (which are complemented by the *Colegrove* Order), it is nonetheless clear that disconnection is a reasonably foreseeable consequence of a consumer's failure to pay his or her water bill.

---

[5] Plaintiffs do not allege that Cleveland Water violates this provision of the Administrative Code.

Without any state-law basis for claiming an unqualified expectation of water service, this Court need go no further. *See Midkiff*, 409 F.3d at 763 ("Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process."). Plaintiffs' due process claims fail at the threshold and should be dismissed.

**D.     This Court should dismiss Plaintiffs' Due Process and Equal Protection claims (Count IV) because they do not allege a constitutionally protected property interest on behalf of the "Overbilling Class."**

Plaintiffs' fourth cause of action—a variation of the due process claims raised in Count III, but brought under 42 U.S.C. § 1983 on behalf of members of the "Overbilling Class," fails for many of the same reasons. Here, however, Plaintiffs also attempt to bootstrap a claim for violation of the Equal Protection Clause of the United States Constitution to their due process argument. Neither theory can support their claims. Simply put, § 1983 lawsuits are not the proper mechanism for disputing the accuracy of consumers' water bills.

Plaintiffs' interest "in accurate water bills" does not rise to the level of a constitutionally protected right that may be addressed under § 1983. (*See* Compl. ¶ 155.) The statute on which Plaintiffs base their alleged property interest—Ohio Revised Code § 743.04—never purports to address consumer rights or expectations. Rather, it authorizes "the director of public services or any other city official or body" of a municipal corporation to "assess and collect a water rent or charge of sufficient amount and in such manner as the director, other official, or body determines to be most equitable." *Id.* Its purpose and meaning are plain to see: it empowers municipal corporations to set and collect rates; the statute says *nothing* about individual consumers' rights to challenge an allegedly inaccurate water bill. Ohio R.C. § 743.04 therefore cannot support Plaintiffs' due process claims.

17

Plaintiffs, however, try to stretch Ohio R.C. § 743.04 even further to suggest that Cleveland Water's billing practices violate *substantive*—not just procedural—protections such as the United States Constitution's Equal Protection Clause. This is a bridge too far. Under Ohio law, "[w]here . . . the claim asserted rests on the deprivation of a property interest alone, the constitutional right invoked is the *procedural* due process right to notice and hearing" and "substantive rights created by the federal Constitution" do not come into play unless plaintiffs allege deprivation of "life or liberty interests." *1946 St. Clair Corp. v. City of Cleveland*, 550 N.E.2d 456, 460 (Ohio 1990) (emphasis in original). The Sixth Circuit has likewise held that claims of "entitlement under state law to water and sewer service" do not garner substantive due process protections. *Mansfield*, 988 F.2d at 1476-1477 ("Therefore, like the Third Circuit, we reject the claim that conditioning the receipt of water service on the satisfaction of past due charges for services rendered to the applicant's residence raises the question of a substantive due process violation.").

Finally, there is no basis for applying the Equal Protection Clause because Plaintiffs' alleged property interest in "accurate water bills" is not a "fundamental right." It is well established that "'[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class' or burdened a fundamental right." *Midkiff*, 409 F.3d at 770 (quoting *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996)). Plaintiffs do not allege any racial or discrimination component to their Overbilling Class, so membership in a protected class is not at issue. But they also fail to allege that Ohio law creates a "fundamental right" to an accurate water bill, which disposes of the Equal Protection Claim in its entirety. As explained above, even if Ohio R.C. § 743.04 *did* create property rights for Plaintiffs—which it does not—that alleged property interest

18

does not garner substantive protections. The Equal Protection Clause exists to protect rights more deeply cherished and fundamental than consumer disputes over the accuracy of their water bills. *See Chun v. New York City Dept. of Environmental Protection*, 989 F. Supp. 494 (S.D.N.Y. 1998) ("This circuit recognizes substantive due process claims which involve 'fundamental' rights, which an interest in an accurate individual water bill is not.").

**E.    Ohio R.C. § 2744.02 requires dismissal of Plaintiffs' claim for money damages brought under Ohio's Fair Housing Act.**

In their Complaint, Plaintiffs seek a broad spectrum of remedies ranging from declaratory and injunctive relief to compensatory damages. Ohio law, however, provides that political subdivisions like the City of Cleveland are "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a government or proprietary function." R.C. § 2744.02(A)(1). Consequently, even though Ohio's Fair Housing Act authorizes actions for money damages, *see* R.C. § 4112.99, Plaintiffs cannot recover money damages from the City of Cleveland for those claims unless they identify one of the exceptions to immunity identified in R.C. § 2744.02. They cannot.

As the Southern District of Ohio recognized in *Howard v. City of Beavercreek*, 108 F. Supp. 2d 866, 870 (S.D. Ohio 2000), immunity for political subdivisions applies to damages claims brought under Ohio's Fair Housing Act, R.C. § 4112.02(H). The same is true when the claim is based on the City's carrying out of a "proprietary function," which under Ohio law encompasses "[t]he establishment, maintenance, and operation of a utility, including . . . *a municipal corporation water supply system*." R.C. § 2744.01(G)(2)(c) (emphasis added). Consequently, if this Court is otherwise inclined to allow Plaintiffs' claim for a violation of the Ohio Fair Housing Act, R.C.

19

§ 4112.02(H), to withstand the motion to dismiss, then it should nevertheless enter an order dismissing Plaintiffs' request for money damages under the Act.

IV.     **<u>CONCLUSION</u>**

Plaintiffs' claims fail on multiple levels. The allegations of discrimination Plaintiffs make under the Federal and Ohio Fair Housing Act are too thinly supported to meet the "robust causality requirement" imposed by the Supreme Court in *Texas Dept. of Housing and Community Affairs*. Plaintiffs' Due Process and Equal Protection allegations fare no better because Plaintiffs are unable as a matter of law to identify a protected property interest—much less a fundamental right—to support a § 1983 claim under either the United States or Ohio Constitutions. For these reasons, and those detailed above, the City of Cleveland requests that this Court grant its Motion to Dismiss.

Respectfully submitted,


*/s/ Michael J. Ruttinger*
Robert J. Hanna (0037230)
Sanford E. Watson (0040862)
Michael J. Ruttinger (0083850)
Christine M. Snyder (0086788)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:      robert.hanna@tuckerellis.com
                sanford.watson@tuckerellis.com
                michael.ruttinger@tuckerellis.com
                christine.snyder@tuckerellis.com

Barbara A. Langhenry (0038838)
Director of Law
City of Cleveland, Ohio
Department of Law
601 Lakeside Avenue, Room 106
Cleveland, OH 44114-1077
Telephone:  216.664.2800
Facsimile:  216.420.8560
E-mail: blanghenry@city.cleveland.oh.us

*Attorneys for Defendant City of Cleveland*

21

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

I hereby certify that this brief complies with the track and page-number limitations required

by Local Rule 7.1(f) for cases that have not yet been assigned to a track.

    */s/ Michael J. Ruttinger*
    Robert J. Hanna (0037230)
    Sanford E. Watson (0040862)
    Michael J. Ruttinger (0083850)
    Christine M. Snyder (0086788)
    Tucker Ellis LLP
    950 Main Avenue, Suite 1100
    Cleveland, OH 44113-7213
    Telephone:  216.592.5000
    Facsimile:  216.592.5009
    E-mail:    robert.hanna@tuckerellis.com
        sanford.watson@tuckerellis.com
        michael.ruttinger@tuckerellis.com
        christine.snyder@tuckerellis.com

    Barbara A. Langhenry (0038838)
    Director of Law
    City of Cleveland, Ohio
    Department of Law
    601 Lakeside Avenue, Room 106
    Cleveland, OH 44114-1077
    Telephone:  216.664.2800
    Facsimile:  216.420.8560
    E-mail: blanghenry@city.cleveland.oh.us

    *Attorneys for Defendant City of Cleveland*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2020, a copy of the foregoing Defendant City of Cleveland's Motion to Dismiss Plaintiffs' Class Action Complaint was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Michael J. Ruttinger*
Robert J. Hanna (0037230)
Sanford E. Watson (0040862)
Michael J. Ruttinger (0083850)
Christine M. Snyder (0086788)
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:     robert.hanna@tuckerellis.com
            sanford.watson@tuckerellis.com
            michael.ruttinger@tuckerellis.com
            christine.snyder@tuckerellis.com

Barbara A. Langhenry (0038838)
Director of Law
City of Cleveland, Ohio
Department of Law
601 Lakeside Avenue, Room 106
Cleveland, OH 44114-1077
Telephone:  216.664.2800
Facsimile:   216.420.8560
E-mail: blanghenry@city.cleveland.oh.us

*Attorneys for Defendant City of Cleveland*