UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| ALBERT PICKETT, JR., *et al.*, | ) | Case No.: 1:19 CV 2911 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| CITY OF CLEVELAND, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |


Currently pending before the court in the above-captioned case is Plaintiffs' Motion for Class Certification (ECF No. 65) and Motion to File Corrected Memorandum of Law in Support of their Motion for Class Certification ("Motion") (ECF No. 79). For the following reasons, the court grants Plaintiffs' Motions (ECF No. 65, 79).

## I. BACKGROUND

A. Factual Background

On December 18, 2019, Plaintiffs Albert Pickett, Jr. ("Pickett"), Keyonna Johnson ("Johnson"), Jarome Montgomery ("Montgomery"), Odessa Parks ("Parks"), and Tiniya Shepard (formerly known as Tiniya Hall) ("Shepard") (collectively, "Plaintiffs") filed a Class Action Complaint in this court. (ECF No. 1.) Plaintiffs are all African-American current or former customers of Cleveland Water. (Compl. ¶¶ 22–26, 73–113, ECF No. 1.) Cleveland Water is a department of the City. (*Id.* ¶ 27.) The Cleveland Codified Ordinances (the "CCO") govern Cleveland Water's administration. (Mot. at PageID #104, ECF No. 8); *see also* CCO §§ 129.05, 535 *et seq.* In addition, Defendant is bound by a consent decree (the "*Colegrove* Order") as a result of

*Colegrove v. City of Cleveland*, No. 74-1007 (N.D. Ohio June 25, 1987). (Compl. ¶ 40, ECF No. 1.)

Together, the CCO and the *Colegrove* Order require Defendant to complete a series of procedural steps before terminating a customer's water service. (Mot. at PageID #104–05, ECF No. 8; Consent Decree at PageID #44, ECF No. 1-1.) Plaintiffs allege that Defendant has a pattern of not providing these procedural safeguards to customers before terminating their water service. (Compl. ¶¶ 42–49.) Plaintiffs also allege that customers of Defendant are frequently given extremely high water bills even after the customers confirm that there are no leaks anywhere on their properties. (*Id.* ¶¶ 37, 86, 93, 100, 108.) Some customers were even assessed high water bills after Cleveland Water had already shut-off their water service. (*Id.* ¶ 87.) Plaintiffs allege that these high water bills are erroneous and are caused by Defendant's water meters incorrectly recording water usage. (*Id.* ¶¶ 8, 38.) Plaintiffs further allege that Defendant never gives customers who believe that their meters are inaccurately recording water usage an opportunity to contest their bills. (*Id.* ¶ 46.)

Twice a year, Defendant converts all overdue water bills into tax liens that are applied to the overdue customer's property ("water lien"). (Compl. ¶ 51, ECF No. 1.) Plaintiffs allege that there is no statutory minimum arrearage required to initiate the water lien process. (*Id.*) According to Plaintiffs, these water liens put properties at a higher risk of tax and/or property foreclosure and places the owner or tenant at risk of eviction. (*Id.* ¶ 52.) Further, Plaintiffs allege that the county treasurer can initiate foreclosure actions against the homeowner to recover unpaid water liens, but sometimes sells the water liens at auction to private investors who are also able to initiate foreclosure actions on a property themselves. (*Id.* ¶¶ 52–53, 57.)

Between 2014 and 2018, Cleveland Water placed more than 11,000 water liens on properties in Cuyahoga County, and nearly 6,000 residents were subject to property tax foreclosures. (Compl. ¶ 14, ECF No. 1.) Plaintiffs provided statistical evidence demonstrating that a majority of these water liens were placed in majority-Black Census blocks as compared to majority-White Census

blocks, despite the fact that the majority of Cuyahoga County's population is White. (*Id.* ¶¶ 15–16, 64–69.) As a result, Plaintiffs allege that Defendant's policy of placing water liens on the properties of customers with overdue bills disproportionately impacts African-Americans. (*Id.* ¶¶ 124–132.)

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs seek to represent the following classes:

> (1) a class of all Black homeowners or residents in Cuyahoga County who have been obligated, within the last two years, to pay debt secured by their property stemming from amounts originally owed to Cleveland Water ("Water Lien Class");
>
> (2) a subclass of all Black homeowners or residents in Cuyahoga County who have been obligated, within the last two years, to pay increased mortgage escrow payments as a result of their mortgagee or mortgage service satisfying a debt secured by the property stemming from amounts originally owed to Cleveland Water ("Escrow Subclass");
>
> (3) a class of all persons who, within the last two years, had their water service disconnected by Cleveland Water and did not receive advance written notice of the shutoff or their right to request a hearing to dispute the impending disconnection ("Shutoff Class"); and
>
> (4) a class of all persons who, within the last two years, have been overbilled for water services by Cleveland Water and did not receive an opportunity to contest the bills through a hearing ("Overbilling Class").

(Compl. ¶ 115, ECF No. 1.)

On behalf of themselves and the putative class members, Plaintiffs bring the following claims against Defendant: (1) violation of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("Count One") resulting from the alleged disparate impact that Defendant's water lien policy has on African-Americans; (2) violation of the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02(H) ("Count Two") resulting from the alleged disparate impact that Defendant's water lien policy has on African-Americans; (3) violation of the Due Process Clause of the U.S. Constitution and the Due Course of Law Clause of the Ohio Constitution ("Count Three") resulting from Defendant's alleged

failure to provide customers notice and opportunity to be heard before terminating water service; and (4) violation of the Due Process and Equal Protection Clauses of the U.S. Constitution and the Due Course of Law Clause under the Ohio Constitution ("Count Four") resulting from Defendant's alleged failure to give customers an opportunity to refute their water bills. (Compl. ¶¶ 129, 135, 145, 157–58.)

B. Procedural Background

Plaintiffs filed their Motion for Class Certification (ECF No. 65) on September 19, 2022. Shortly thereafter, on October 3, 2022, Plaintiffs submitted their Motion to file Corrected Memorandum of Law in Support of their Motion for Class Certification and Amended Declaration of Plaintiff Jarome Montgomery (ECF No. 79). Specifically, they state that the Motion to File Corrected Memorandum of Law and Amended Declaration:

> seeks to clarify the record before the Court. Paragraph 12 of Mr. Montgomery's original declaration referenced foreclosure proceedings and could be read to associate the foreclosure with the water liens. As identified in the Complaint, Mr. Montgomery narrowly avoided tax foreclosure before water liens were placed on Mr. Montgomery's property. The Amended Declaration of Jarome Montgomery removes reference to the foreclosure action to eliminate any inadvertent confusion. The Corrected Memorandum of Law in Support of Plaintiffs' Motion for Class Certification cites the Amended Declaration and strikes the reference to Mr. Montgomery's foreclosure proceedings . . . .

(Mot. at PageID #3513, ECF No. 79.) On December 15, 2022, Defendant submitted its Opposition (ECF No. 84) to Plaintiffs' Motion for Class Certification. Plaintiffs filed their Reply (ECF No. 87) in support of their Motion on January 19, 2023.

## II. LEGAL STANDARD

"To obtain class certification, the plaintiffs must show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing Fed. R. Civ. P. 23(a)). These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. In addition to fulfilling the four prerequisites of class certification under Rule 23(a), the proposed class must also satisfy at least one of the three requirements for class maintenance under Rule 23(b). *See e.g., In re Whirlpool Corp.*, 722 F.3d at 850. District courts have "broad discretion to decide whether to certify a class." *Id.* (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

### III. ANALYSIS

The court considers Plaintiffs' request for class certification with respect to the Water Lien, Shutoff, and Overbilling Classes.[1] The court begins by addressing the four requirements of Rule 23(a) before considering whether class certification is appropriate under Rule 23(b).

### A. Rule 23(a)

1. Numerosity

Rule 23(a)(1) provides that, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "However, impracticable does not mean impossible." *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007). Instead, a showing that, "plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required" is sufficient to met that burden. *Id.* (citing *Mann v. Acclaim Fin. Servs.*, 232 F.R.D. 278, 283 (S.D. Ohio 2003)). The Sixth Circuit has observed that "there is no strict numerical test for determining

---

[1] The court acknowledges that Plaintiffs no longer seek to certify the Escrow Subclass as alleged in their Complaint (ECF No. 1.) (Mot. at PageID #3523, n. 2, ECF No. 79.)

-5-

impracticability of joinder." *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). While a putative class need not plead or prove "the exact number" of class members to satisfy the numerosity requirement, impracticability of joinder must be positively shown, and cannot be speculative. *Id.* at 965-66. *See also Lichoff v. CSX Transp., Inc.*, 218 F.R.D. 564, 570 (N.D. Ohio 2003) ("Plaintiffs must present more than speculation, but plaintiffs do not have to 'establish class size with precision.'") To satisfy the numerosity requirement, plaintiffs must show "some evidence of or reasonably estimate the number of class members, and, in assessing numerosity, the court may make common sense assumptions without the need for precise qualifications of the class." *Thomas v. Haslam*, 303 F.Supp.3d 585, 634 (M.D. Tenn. 2018). Although no firm numerical test exists, "substantial" numbers are ordinarily sufficient to satisfy the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (finding a potential class size of thousands of class members substantial). And while not an absolute rule, courts have accepted that a class of forty or more members is sufficient to establish numerosity." *Appoloni v. United States,* 218 F.R.D. 556, 561 (W.D. Mich. 2003) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Plaintiffs argue that they have satisfied Rule 23(a)'s numerosity requirement because they have identified at least 943 Black residents of Cuyahoga County who belong to the proposed Water Lien and Shutoff classes. (Mot. at PageID #3531, ECF No. 79.) Plaintiffs also maintains that this figure is almost certainly underestimated because it does not include residents in neighborhoods composed of slightly less than 100 percent Black residents. (*Id.*) With respect to the Water Lien Class, they state that this figure "represents the minimum number of water liens assessed against Black residents between 2018 and 2020, as identified by water liens placed in neighborhoods comprised entirely of Black residents." (*Id.*) With respect to the Shutoff Class, Plaintiffs note that "[a]lthough water liens can be certified on certain properties where water service has not been shut

off," this 943 figure encapsulates the number of people who have had their water shut off. (*Id.* at PageID #3531, n. 2.) Additionally, they contend that they have met their burden of demonstrating numerosity with respect to their proposed Overbilling Class because they identify at least 54 current or former Cleveland Water customers in the Overbilling Class. (*Id.* at PageID #3531–32.) They clarify that although the Overbilling class number is likely larger than 54, "this number represents the customers identified in a Cleveland Water spreadsheet tracking customer billing complaints between December 18, 2017 and October 31, 2019, cross-referenced against those who received a Water Review Board hearing" during the same period. (*Id.* at PageID #3532, n. 7.)

Defendant counters that Plaintiffs have failed to establish the membership of the Water Lien Class is "so numerous that joinder of all members is impracticable," as Rule 23(a)(1) requires. (Opp'n at PageID #3626, ECF No. 84.) Defendant maintains that Plaintiffs' claim—that they have identified 943 Black Cuyahoga County residents who belong to the Water Lien Class—is misleading because it does not correspond with Plaintiffs' definition of the Water Lien Class. (*Id.*) In Defendant's view, not every Black homeowner or resident who was assessed a water lien belongs to the putative class because Plaintiffs define the Water Lien Class as those Black homeowners or residents in Cuyahoga County who have been "obligated, within two years of the filing of the Complaint, to pay a debt assessed against their real property, wherein the debt arises from monies originally owed to Cleveland Water." (*Id.* at PageID #3627.) Therefore, under Plaintiffs' definition, "any Black homeowner or resident who had a lien imposed, but paid nothing towards it, does not belong to the Water Lien Class." (*Id.*) Defendant alleges that because the record demonstrates not every person whose property is subject to a water lien pays money towards that lien, Plaintiffs have not met their burden of establishing numerosity with respect to those individuals who actually paid a debt under the lien. (*Id.*)

Here, upon review, the court finds that Plaintiffs have set forth evidence demonstrating the

Shutoff and Overbilling classes' numerosity. (*See* Exs. 22–24 to Mot., ECF No. 65-22–64-24.) Although Plaintiffs do not provide specific numbers for the purported Shutoff Class, the substantial size of the Water Lien Class allows the court to make "common sense assumptions" about the numerous size of Shutoff Class "without the need for precise quantification of the class." *Thomas*, 303 F.Supp.3d at 634. Notably, Defendant does not dispute Plaintiffs' arguments with respect to the Shutoff or Overbilling classes. (Opp'n at PageID #3626-3627, ECF No. 84) (challenging only Plaintiffs' ability to establish numerosity with respect to the Water Lien Class). Accordingly, the court is left to consider whether Plaintiffs have demonstrated numerosity in regard to the Water Lien Class. As stated above, Plaintiffs define the Water Lien Class as "all Black homeowners or residents in Cuyahoga County who have been obligated, within two years of the filing of the Complaint, to pay a debt assessed against their real property, wherein the debt arises from monies originally owed to Cleveland Water." (Mot. at PageID #3523, ECF No. 79.) After reviewing the parties' arguments and relevant case law, the court determines that Plaintiffs have sufficiently demonstrated numerosity.

As a preliminary matter, as Plaintiffs note in their Reply (ECF No. 87), Merriam-Webster defines "obligate" as "to bind legally or morally," or "to commit (something, such as funds) to meet an obligation." *Obligate,* Merriam-Webster's Dictionary (online ed., 2023)  The Oxford English Dictionary defines the term similarly. *Obligate*, Oxford English Dictionary (online ed., 2023) ("To bind (a person) morally; to put (a person) under moral obligation; to constrain, compel, oblige."). Therefore, according to plain definition of the term, an obligation does not refer to something that has already been done, such as actually paying a debt pursuant to a lien. Rather, the term refers to an act that legally binds an individual, such as the water liens in the matter herein. Accordingly, the court finds Defendant's argument—that "any Black homeowner or resident who had a lien imposed, but paid nothing towards it, does not belong to the Water Lien Class"—unavailing.

-8-

Taking Plaintiffs' definition of their purported class, the court finds Plaintiffs have satisfied 23(a)'s numerosity requirement because they have shown that joinder would be impracticable for the 943 Black residents of Cuyahoga County that could belong to the Water Lien Class. The court finds this number to be substantial and more than mere speculation. Plaintiffs have set forth substantial evidence to demonstrate they've identified at least 943 residents who would belong to the proposed Water Lien Class. (Mot. at PageID #1408, ECF No. 65) (citing the Parnell Production, Exs. 22-24 to Mot., ECF No. 65-22-65-24.) Facts, common sense, and the nature of Plaintiffs' class definition leave little doubt that the Water Lien Class possesses the numerosity required to satisfy Rule 23(a). Accordingly, the court finds that Plaintiffs have satisfied Rule 23(a)(1)'s numerosity requirement.

<u>2. Commonality</u>

Rule 23(a)(2) mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that plaintiffs "show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that this common answer relates to the actual theory of liability in the case." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015).

In discussing the commonality requirement, the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes* stated that "[plaintiffs'] claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Sixth Circuit has held that, "[t]his inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool*, 772 F.3d at 852. Therefore, to demonstrate commonality, plaintiffs must show that the proposed class members have suffered the same injury. *Id*. However, "variation

in the ancillary details of the class members' cases is insufficient to defeat certification, as long as '[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue.'" *Thomas v. Haslam*, 303 F.Supp.3d 585, 635 (M.D. Tenn. 2018) (quoting *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004).

Plaintiffs argue that their race discrimination claims, under the Fair Housing Act ("FHA") and the Ohio Civil Rights Act ("OCRA"), raise common questions of law or fact that satisfy Rule 23(a)(2). (Mot. at PageID #3532, ECF No. 79); *see also Ohio Civ. Rts. Comm'n v. Harlett*, 724 N.E.2d 1242, 1244 (Ohio Ct. App. 1999) (analyzing the OCRA under the same standard as the FHA). They maintain that because Defendant's water lien policy applies to the entire Water Lien Class, proof of the elements of a *prima facie* race discrimination claim under the FHA will be subject to class-wide evidence. (Mot. at PageID #3533, ECF No. 79.) Further, Plaintiffs contend that injury and damage to members of the Water Lien Class are easily capable of class-wide resolution. (*Id.*) Specifically, they state that:

> [a]ll members of the Water Lien Class have suffered the same injury: they are Black homeowners or residents who were or are Cleveland Water customers, whose properties had or have water liens assessed against them. The Court can therefore issue a single declaration finding that Cleveland Water's lien policies and practices violate the FHA and the Ohio Civil Rights Act by creating a disproportinate impact on the availability of housing to Black homeowners or residents without legitimate justification.

(*Id.* at PageID #3533–34.)

Next, Plaintiffs argue that their procedural due process claims under the U.S. and Ohio Constitutions raise common questions of law or fact that satisfy Rule 23(a)(2)'s commonality requirement. (*Id.* at PageID #3534.) They maintain that proof of the elements of a procedural due process claim is subject to class-wide evidence. (*Id.* at PageID #3535.) With respect to the Shutoff Class, Plaintiffs state that they will "demonstrate that Cleveland Water deprives customers of

adequate notice and an opportunity for a hearing before their water service is terminated." (*Id.*) As to the Overbilling Class, Plaintiffs contend that they will demonstrate that Cleveland Water fails to give customers an adequate opportunity to contest billing errors through a hearing before the Water Review Board, thereby depriving Plaintiffs of their constitutionally protected property interest in receiving accurate billing without notice and an opportunity to be heard. (*Id.*) They contend that this inquiry presents common questions of fact and law, such as whether Cleveland Water bills its customers in excess of their water usage, and whether Defendant's failure to provide procedural protections for overbilled customers violates due process. (*Id.* at PageID #3536.)

Defendant does not present any arguments challenging Plaintiffs contention that they've satisfied the commonality requirement with respect to any of Plainitffs' proposed classes. Upon review, the court finds that all three classes possess common questions of law and fact. With respect to the Water Lien Class, the court finds that proposed class members have suffered the same injury (the imposition of the allegedly discriminatory water lien) and a common answer to the question of whether the City's lien policy is discriminatory under the FHA and OCRA will resolve the class's issue "in one stroke." *Dukes*, 564 U.S. at 350. Similarly, purported members of the Shutoff and Overbilling classes have suffered the same alleged due process violations. Addressing the question of whether Defendant's conduct does in fact violate the Due Process clause will resolve their alleged injuries summarily. Accordingly, the court determines that Plaintiffs have met their burden of demonstrating commonality.

### 3. Typicality

Rule 23(a) provides that one or more members of a class may sue as representatives of the party only if, "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). To prove typicality, plaintiffs must prove that the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v.*

*Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1988) (en banc). This requirement "insures that the class representative's interests are aligned with the interests of the class members so that, by pursuing his or her own interests, the class representative also advances the class members' interests." *McDonald v. Franklin Cnty., Ohio*, 306 F.R.D. 548, 556 (S.D. Ohio 2015) (citing *Sprague*, 133 F.3d at 399).

The Sixth Circuit has held that a plaintiff's claim is typical of the class if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). *See also Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009) ("In instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members."). However, the plaintiff's claims need not be factually identical to the class members' claims in order to satisfy Rule 23(a)'s typicality requirement. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976) ("Factual identify between the plaintiff's claims and those of the class he seeks to represent is not necessary). *See also In re Whirlpool*, 722 F.3d at 855 (finding typicality even though only some class members, including the class representatives, had experienced mold as a result of the alleged product defect in their washing machines whereas other class members had not yet found mold in their machines).

Plaintiffs incorporate their arguments relative to commonality and argue that they have met the typicality requirement because each of the named Plaintiff's claims arises from the same course of conduct as the class-wide claims. (Mot. at PageID #3536, ECF No. 79) (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, n.13 ("The commonality and typicality requirements of Rule 23(a) tend to merge."). Specifically, they state that, "the Named Plaintiffs and the proposed classes are subject to the same unlawful water lien, shutoff, and overbilling policies and practices

by Cleveland Water and suffered comparable injuries as a result thereof." (*Id.*) Additionally, they note that the named Plaintiffs seek recovery based on legal theories that, if successful, will lead to recovery for the remainder of the class. (*Id.* at PageID #3536–37.)

Defendant does not contest whether Plaintiffs have satisfied the typicality requirement with respect to the Shutoff and Overbilling classes. (Opp'n at PageID #3628-29, ECF No. 84.) Defendant only contends that discovery has revealed that there is no "typical" class members within the Water Lien Class, such that certification is inappropriate under Rule 23(a)(3). The City argues that Plaintiffs have failed to satisfy Rule 23(a)(3) because their argument focuses on the common course of conduct, the assessment of water liens to their properties, rather than whether the proposed class members "have been *injured* by paying money towards such liens, which Plaintiffs' class definition requires." (Opp'n at PageID #3628, ECF No. 84.) Defendant further states that not all of the named Plaintiffs have been injured at all, let alone injured in the same way that Plaintiffs allege that water liens injure members of the class because not all members of the Water Lien Class have paid money towards their liens. (*Id.*)  Therefore, in its view, "the court will need to consider not only whether any particular class member was assessed penalties or interest on the balance of a lien, but also whether the homeowner actually paid any money toward such penalties and interest," and whether any subsequent foreclosure was attributable to the assessment of the water liens. (*Id.* at PageID #3628–29.) Accordingly, Defendant argues that the court will need to separate homeowners who have been damaged by a foreclosure attributable to a water lien, as well as those who have had to pay money towards their liens, from those who have not. (*Id.* at PageID #3629.)

Upon review of the record, the court finds that Plaintiffs have established typicality in each of their three proposed classes. First, the court finds that the interests of the Named Plaintiffs in the Shutoff and Overbilling classes are aligned with the interests of the class members for the same reasons those classes have satisfied the commonality requirement: the class representatives and class

members have suffered the same injury, and seek resolution regarding the question of whether Defendant's conduct violated their due process rights. *See Dukes*, 564 U.S. at 349, n. 5 ("We have previously stated...that 'the commonality and typicality requirements of Rule 23(a) tend to merge.'") (citing *Falcon*, 457 U.S. at 157-58, n. 13) Accordingly, the court is left to consider whether Plaintiff has met the typicality requirement in regard to the Water Lien Class. Upon review of the record, the court determines that Named Plaintiffs have.

First, the court finds that Named Plaintiffs' claims fairly encompass the proposed class members' claims because both claims arise from the same event, practice, or course of conduct: the assessment of the water liens. Additionally, the Named Plaintiffs' claims are typical of those class members because they rely on the same legal theories. While each individual's factual circumstances—such as the specific amount of debt or interest owed—may vary, the crux of the Named Plaintiffs' claims and those of the class members "are so interrelated" because they both seek relief from the City's water lien policy. *Thomas*, 303 F.Supp.3d at 636 (citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012)). Thus, the court finds that the interests of the class members will be fairly and adequately protected" by the Named Plaintiffs in this case. *Id*.

Additionally, the court finds Defendant's argument—that not all of the Named Plaintiffs are typical of the class members' claims because several of the Named Plaintiffs have not paid any money towards their lien whereas some class members have—unpersuasive. As noted above, class membership in the Water Lien Class is not contingent upon an individual's payment of funds under their water lien, rather just the actual assessment of the water lien. Moreover, this factual difference is insufficient to defeat class certification. In *In re Whirlpool*, the Sixth Circuit affirmed the district court's certification of a class of laundry machine owners who alleged the same product defect that caused mold to grow in their laundry machines. *In re Whirlpool*, 722 F.3d at 858-59. There, the

defendant argued that the named plaintiff's claims were atypical of the class because some class members had not yet experienced mold in their washing machines whereas the named plaintiffs had. *Id.* at 855. Nevertheless, the Sixth Circuit found that this factual difference "did not preclude the district court from certifying the Ohio class." *Id.* Therefore, even if the court credited Defendant's arguments that the differences in injury means the class claims are atypical, those factual differences would not be sufficient to defeat class certification.

In sum, the court finds that the claims of the Named Plaintiffs in this case and the purported class members are typical because both are alleging the same injury from the allegedly discriminatory course of conduct. Under the above interpretation of class membership, each of the Named Plaintiffs is typical of the class and their claims fairly encompass those of the class members because both the Named Plaintiffs and the class members have been assessed a water lien by Defendant. Furthermore, because commonality and typicality tend to merge, the court finds that Plaintiffs have established typicality for all three classes under Rule 23(a)(3).

### 4. Adequacy

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts analyzing Rule 23(a)(4)'s adequacy requirement must consider two criteria: (1) whether the class representative has common interests with the unnamed members of the class; and (2) whether it appears the class representative will vigorously prosecute the interests of the class through counsel. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976); *McDonald*, 306 F.R.D. at 557. The Supreme Court has noted that commonality and typicality tend to merge with the requirement of adequate representation, "although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Dukes*, 564 U.S. at 349, n. 5. Because a final judgment would be binding on all class members, both criteria are crucial to insuring due process has been met. *In re Am. Med.*

*Sys.*, 75 F.3d at 1083.

With respect to the first criteria, Plaintiffs maintain that the Named Plaintiffs' interests are the same as those of the proposed class and do not conflict with the class's interests. (Mot. at PageID #3537, ECF No. 79.) They contend that the Named Plaintiffs will benefit from the requested injunctive and declaratory relief, and that they are prepared to undertake the responsibilities of being class representatives. (*Id.*) As to the second criteria, Plaintiffs attach several declarations from their counsel detailing their experience in civil rights litigation and complex class action suits. (*Id.* at PageID #3537–38.) Additionally, they state that they have "rigorously examined their past representation, and they do not have any conflicts with the proposed class." (*Id.* at PageID #3538.) Defendant does not set forth any arguments regarding adequacy.

The court finds that the Named Plaintiffs are adequate class representatives. Because their claims are typical of the class members' claims, their interests are aligned with the class members' interests so as to satisfy the first step of the adequacy requirement. *See Senter*, 532 F.2d at 525. In addition, upon review of Plaintiffs counsels' qualifications, the court  finds they possess the qualifications and experience to prosecute the case. In the absence of any conflicts of interests with the proposed class, the court finds that Plaintiffs' counsel can serve as competent counsel and "vigorously prosecute the interests of the class." *Id.* Plaintiffs' have therefore also satisfied the second criteria of the adequacy requirement. Therefore, the court determines that Plaintiffs' have met their burden of satisfying the adequacy prong under Rule 23(a)(3).

### B. Rules 23(b)(2) & (b)(3)

If a party seeking certification satisfies the prerequisites of Rule 23(a), then the party must demonstrate that the class can be maintained under Rule 23(b)(1), (2), or (3). Fed. R. Civ. P. 23(b). *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Having determined that Plaintiffs have satisfied Rule 23(a)'s prerequisites, the court turns to the issue of whether Plaintiffs

have satisfied one of the three conditions set forth in Rule 23(b). Plaintiffs seek certification of the Water Lien Class pursuant to Rule 23(b)(2) and (b)(3), and the Shutoff and Overbilling classes pursuant to (b)(2). The court begins its analysis with considering whether certification of the classes is appropriate under (b)(2).

    <u>1. Rule 23(b)(2)</u>

    To certify a class under Rule 23(b)(2), Plaintiffs must demonstrate that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). The key to class maintenance under (b)(2) class is "'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 428 (6th Cir. 2012) (citing *Dukes,* 564 U.S. at 360). Therefore, "[c]ertification under this rule is appropriate 'where a court, through a single injunction or declaration, can redress 'group, as opposed to individual, injuries.'" *In re Welding Fume Prod. Liability Litigation*, 245 F.R.D. 279, 313 (N.D. Ohio 2007). Notably, the Supreme Court has stated that "[c]ivil rights cases against parties charged with unlawful class-based discrimination are prime example" of the classes Rule 23(b)(2) was formulated to embody. *Anchem*, 521 U.S. at 614.

    In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011), the Supreme Court held that claims of individualized relief, however, do not satisfy Rule 23(b)(2). In reaching this holding, the Court declined to address the broader question of whether Rule 23(b)(2) "applies *only* to requests for such injunctive or declaratory relief and does not authorize the class certification of monetary claims at all." *Id.* (emphasis in original). The Sixth Circuit subsequently answered that question in *Gooch v. Life Investors Ins. Co. of America,* 672 F.3d 402, 433 (6th Cir. 2012). There, the Sixth

Circuit bifurcated class certification under Rule 23(b)(2) and Rule 23(b)(3) where plaintiffs sought declaratory judgment regarding the meaning of a contract as well as monetary damages. *Id.* at 427-28. The Court of Appeals found that the plaintiffs did not combine any claim for individual relief with their request for a classwide injunction, and held that "certifying declaratory relief under Rule 23(b)(2) is permissible even when the declaratory relief serves as a predicate for later monetary relief, which would be certified under Rule 23(b)(3)." *Id.* at 429.

Plaintiff argues that all three of its proposed classes fit within the confines of Rule 23(b)(2) because this is a civil rights action in which the Named Plaintiffs seek an injunction and declaratory judgment to remedy Defendant's allegedly unconstitutional policies and practices. (Mot. at PageID #3538, ECF No. 79.) They further state that Rule 23(b)(2) is an appropriate here because:

> [t]he Named Plaintiffs seek a declaration that (1) Cleveland Water's lien policy disproportionately affect Black homeowners or residents in violation of the FHA and the Ohio Civil Rights Act, and (2) Cleveland Water's shutoff and overbilling policies and practices violate their procedural due process rights under the U.S. Constitution and Ohio Constitution. All these policies and practices, in turn, are generally applicable to each of the three proposed classes. It would thus be inefficient for each class member to seek relief in individual suits.

(*Id.* at PageID #3539.)

Defendant does not contest Plaintiffs argument that certification for the Water Lien Class is proper under Rule 23(b)(2). (*See* Opp'n at PageID #3612-15, ECF No. 84) (arguing only that Plaintiffs have not made a sufficient showing for certification of the Water Lien Class under Rule 23(a) or Rule 23(b)(3).) As to the Shutoff and Overbilling Classes, Defendant argues that because Plaintiffs admit the issue in dispute boils down to legal questions—challenging the constitutionality of Cleveland Water's disconnection and billing practices—the court need not take up the question of certification under Rule 23(b)(2) because summary judgment offers a more opportune moment for the court to address the matter. (Opp'n at PageID #3635–36, ECF No. 84.) Accordingly,

-18-

Defendant contends that each class fails as a matter of law for the reasons incorporated in its Motion for Summary Judgment (ECF No. 64).  (*Id.* at PageID #3636.)

First, Defendant maintains that the Shutoff Class claims' should be resolved on summary judgment because the record demonstrates that it complies with the *Colegrove* consent order and the law requires Defendant to do nothing more. (*Id.*) Further, consistent with *Colegrove*, Defendant states that the record demonstrates that it provides various pre-disconnection notices. (*Id.*) In its view, Plaintiffs lack of evidence that Defendant has violated *Colegrove* is dispositive of the matter. (*Id.*) Moreover, because Plaintiffs' expert, Roger Colton ("Colton") made no conclusions about compliance or noncompliance with *Colegrove*, the undisputed record confirms that Defendant complies with *Colegrove* and therefore Plaintiffs' suggestions to expand access to notice exceed its obligations under *Colegrove* and are not necessary. (*Id.* at PageID #3637.)

Second, Defendant argues that the Overbilling Classes claims' should be resolved in favor of Defendant on summary judgment because Due Process does not require the Water Review Board to hear all billing disputes and therefore no Rule 23(b)(2) class is appropriate. (*Id.*) More specifically, they state that, "Plaintiffs proclaim that Cleveland Water 'has a practice of erroneously and arbitrarily overbilling its customer,' but have never put forth any documentary or testimonial evidence to suggest the existence of systemic problems with inaccurate bills." (*Id.*) (internal citations omitted.) Further, Defendant contends that Plaintiffs fail to address the record evidence which shows that Defendant offers a robust customer service process for customers who believe they have received an inaccurate water bill. (*Id.* at PageID #3638.)

The court begins by considering the Shutoff and Overbilling Classes. The court finds that certification appropriate for both classes because Plaintiffs seek a declaratory judgment that Defendant's shutoff and overbilling practices violate their procedural due process rights under the U.S. and Ohio Constitutions. Because Plaintiffs seek the same declaratory judgment and a

permanent injunction that would provide relief to each member of the Shutoff and Overbilling Classes, certification is warranted under Rule 23(b)(2). (*See* Compl. at PageID #38, ECF No. 1). In other words, a declaratory judgment finding Defendant's notice and hearing procedures unlawful, or a single injunction enjoining the City from continuing its current procedures "would provide relief to each member of the class." *See also Wal-Mart Stores, Inc.*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."). The court declines to consider Defendant's arguments with respect to the merits of Plaintiffs' claims because the Sixth Circuit has held that district courts may not "turn [ ] class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool*, 722 F.3d at 852–53 (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012)).

Next, the court considers whether certification under Rule 23(b)(2) is appropriate for the Water Lien Class. Here, in light of *Gooch*, the court concludes that certification of the Water Lien Class is appropriate under (b)(2) because Plaintiffs seek an injunction and declaratory judgment— that Defendant's policies and practices violate Due Process—which would provide relief to each member of the Water Lien Class. *See Wal-Mart*, 564 U.S. at 360. As established above, *Gooch* "approved the practice of bifurcated certification: subrule (b)(2) certification for contract interpretation, and subrule (b)(3) certification of classes and subclasses for determining damages." *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 279 (6th Cir. 2018); *Gooch*, 672 F.3d at 428 ("The point is not simply that declaratory relief predominates over monetary relief or that monetary relief is incidental to declaratory relief. It is that, in this case, declaratory relief is a separable and distinct type of relief that will resolve an issue common to all class members."). In *Clemons*, the Sixth Circuit extended this approach to ERISA claims. *Id. See also Desai v. Geico Casualty Co.*, 574 F.Supp.3d 507, 539–40 (N.D. Ohio 2021) (J., Calabrese).

Because certification is driven by a class's ability "to generate common *answers* apt to drive

the resolution of the litigation," the court finds that certification here is appropriate because the issue of whether Defendant's policies and practices were constitutional is not only common to the Water Lien Class members, but also dispositive of the matter. *Dukes*, 564 U.S. at 350. Moreover, similar to the plainitffs in *Gooch*, Plaintiffs specifically ask the court for injunctive relief and a declaratory judgment separate from any request for monetary damages, which would be subject to the confines of (b)(3). *See Gooch*, 672 F.3d at 428. In short, Plaintiffs have not "combine[d] any claim for individualized relief with [their sought after] classwide injunction." *Wal-Mart*, 564 U.S. at 361. Therefore, the court extends *Gooch*'s rationale here and concludes that certification of the Water Lien Class is appropriate under (b)(2), and certifies all three of Plaintiffs' classes under (b)(2).

<u>2. Rule 23(b)(3)</u>

Plaintiffs also seek certification of the Water Lien Class under Rule 23(b)(3). Under Rule 23(b)(3), a court may certify a class if it meets the requirements of Rule 23(a) and the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Supreme Court has held that Rule 23(b)(3) is perhaps the most flexible pathway of 23(b), as it "allows class certification in a much wider set of circumstances" than either (b)(1) or (b)(2). *Wal-Mart*, 564 U.S. at 362.

i. Predominance

The court begins by considering whether Plaintiffs have satisfied the predominance requirement. The Supreme Court has held that the predominance inquiry considers "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016). This requirement is met when "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.*. The Sixth Circuit has held that, "[t]o meet the

predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544. But "[a] plaintiff class need not prove that each element of a claim can be established by classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 858. Indeed, "[a] class may be certified based on a predominant common issue even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020). The predominance requirement is satisfied if a common question is at the heart of the litigation. *Powers v. Hamilton Cnty Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007).

Plaintiffs note that the Water Lien Class seeks relief under the FHA for disparate impact, and launch two arguments as to why predominance has been satisfied. (Mot. at PageID #3540, ECF No. 79.) First, Plaintiffs argue that common questions predominate each element of its disparate-impact claim under the FHA. (*Id.*); *see also Tex. Dept. of Housing and Cmty. Affairs v. Inclusive Cmtys Project, Inc.*, 135 S. Ct. 2507, 2523–24 (2015) (noting that a disparate-impact claim under the FHA requires a plaintiff to: (1) identify the specific policy being challenged; (2) demonstrate a disparity in the protected class; and (3) show a connection between the challenged policy and the disparity). Specifically, they argue that the controlling issue—whether Defendant's disproportionate placement of water liens on Black homeowners and residents of Cuyahoga County violates the FHA—presents a common question of law applicable to all members of the Water Lien Class. (*Id.*) Plaintiffs note that each element of their disparate-impact claim under the FHA presents a common question of fact because they have alleged: (1) a specific policy they challenge, Defendant's water lien policy; (2) a statistical disparity in the number of liens placed on Black homeowners in Cuyahoga County as opposed to their white counterparts; and (3) a connection between Defendant's

water lien policy and the disproportionate number of Black homeowners with liens on their properties. (*Id.* at PageID #3541.)

Second, Plaintiffs argue that predominance is established here because the "causal effects of imposing a water lien on a residential property is another common question of fact that would not require the Named Plaintiffs to introduce individualized proof or argue individualized legal points." (*Id.* at PageID #3542.) They maintain that in the course of discovery they have presented statistical evidence establishing the requisite causal connection between Defendant's attachment of a water lien and an increased likelihood of municipal tax foreclosure relative to those properties without water liens. (*Id.*) Plaintiffs state that the fact "[t]hat some residents may also face foreclosure for reasons other than Cleveland's water lien policy is irrelevant because the policy disproportionately affects Black residents and necessarily causes them to be at greater risk of foreclosure and eviction." (*Id.*) Additionally, the possibility of the class members' individual calculation of damages does not defeat predominance because "the Supreme Court made it clear that the possible need to assess damages on an aggregated basis does not by itself defeat predominance." (*Id.* at PageID #3543) (citing *Tyson Foods*, 136 S.Ct. at 1045). Further, Dr. Steil's report calculated method of determining damages stems from Defendant's course of conduct that applies to the whole class and can be calculated for each class member using a common methodology. (*Id.* at PageID #3543–44.)

Defendant counters that the predominance test is not satisfied here because individualized damage-causation questions predominate over questions common to the class, thereby precluding certification under Rule 23(b)(3). (Opp'n at PageID #3629, ECF No. 84.)  Defendant states that several individualized issues must be addressed before determining whether liability exists under the FHA for each Water Lien Class member. (*Id.*) Specifically,

[b]efore any class member can recover under the Act, there must be

-23-

> a showing that Cleveland Water's policies 'made unavailable' housing to Black homeowners. In other words, integral to any particular class member's claim is the question of whether the class member lost housing due to Cleveland Water's action (*i.e.*, through foreclosure). This is not just a question about whether the class member incurred 'damages' (like the aforementioned penalties and interest attributable to water liens) but a necessary part of the liability analysis required under the Act, because a class member who did not lose housing allegedly due to Cleveland Water's actions cannot establish causation. Thus, without a predicate foreclosure, there is no path for a Water Lien Class member to recover the penalties and interests that form the backbone of Plaintiff's damages model; mere imposition of a water lien is insufficient to prove damages under the Act.

(*Id.* at PageID #3630.) Additionally, they maintain that Plaintiffs' showing at this stage does not address the individualized causation questions common to members of the Water Lien Class. (*Id.*) As the record demonstrates, not every person who had a lien assessed against their property experienced a foreclosure or loss of housing. (*Id.*) Therefore, Plaintiffs have done nothing to answer the question of how its proposed Water Lien Class can address the causation question. (*Id.*) Further, they argue that Plaintiff's expert, Dr. Steil, cannot calculate damages because:

> [t]here is a major disconnect between Dr. Steil's damages model and the Fair Housing Act claim Plaintiffs allege against the City of Cleveland. Plaintiff's theory of liability is based on allegations that *Cleveland* violates the Fair Housing Act by assessing water liens in a manner that disparately impacts Black homeowners, leading in turn to making housing 'unavailable' due to an increased risk of foreclosures. Yet, as mentioned above, Dr. Steil does not analyze whether Cleveland Water's actions make housing unavailable.

(*Id.* at PageID #3632.) Defendant also takes exception to Dr. Steil's damages model because Cuyahoga County, not it, is responsible for assessing penalties on liens. (*Id.*) Therefore, in its view, a damages model that predicates a class-wide assessment of damages on the actions of a separate governmental entity is inconsistent with the Supreme Court's mandate that a plaintiff's class-wide theory "be consistent with its liability case". (*Id.* at PageID #3633.) Finally, Defendant contends that even if Plaintiffs and Dr. Steil could "premise classwide damages on penalties and

interest imposed by a non-party, Dr. Steil dealt his own model a fatal blow when he admitted that as much as 20% of the Water Lien Class could have no economic damages under his model" because courts generally require there be a *de minimis* number of cases requiring individualized proof of injury and causation. (*Id.*) After considering the parties' arguments and relevant case, the court finds Plaintiffs' position to be well-taken.

First, Defendant's argument, that individual questions will dominate the court's analysis because each class member has not shown that Defendant's water liens have made housing unavailable to them under 42 U.S.C. § 3604(a), is misplaced. In relevant part, 42 U.S.C. § 3604(a) provides that it shall be unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable* or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." (emphasis added.) Although the present matter does not involve the purchase or rental of homes, Plaintiffs interpret the provision broadly to encompass the City's water lien policy. In fact, the Sixth Circuit has held that, "Congress intended § 3604 to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class." *Babin*, 18 F.3d at 344.

Moreover, other courts have recognized that the Fair Housing Act ("FHA") covers activities other than the purchase or rental of homes that have the potential to affect housing for minorities. *See United States v. Mitchell*, 580 F.2d 789 (5th Cir. 1978) (finding that racial steering is prohibited under § 3604); *Hanson v. Veterans Admin.*, 800 F.3d 1381, 1386 (5th Cir. 1986) (concluding that discriminatory appraisals constitute violations of § 3604); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 301 (7) (holding that § 3604 applies to insurance redlining and discriminatory pricing); *Bowen v. American Title Co.*, No. 04-2575 D/P, 2007 WL 9706328, at *4 (W.D. Tenn. Mar. 28, 2007) (finding that the plaintiffs' "effort here to expand the scope of § 3604 to encompass transactions to involve discrimination in home improvement and debt consolidation lending on

-25-

grounds that the burden of the debt may ultimately lead to foreclosure and the ultimate loss of the borrower's home is arguably consistent with the court's expansive view of § 3604's reach."); *Pitchford v. American Title Co.*, No. 04-2743, 2007 WL 9706252, at *4 (W.D. Tenn. Mar. 29, 2007).Therefore, the court need not meticulously examine each class member's factual background to determine whether they suffered a municipal foreclosure or some other form of individualized damages because the mere assessment of the water lien on their property makes has the effect of making housing unavailable to them within the scope of 42 U.S.C. § 3604 and thereby allows them to pursue an action under the FHA.

Having established that Plaintiffs' claims are encompassed by the FHA, the court also determines that predominance is established here because Plaintiffs' disparate-impact claim present the same common question that lies at the heart of this litigation: whether Defendant's disproportionate assessment of water liens on Black homeowners in Cuyahoga County, under Defendant's facially neutral water lien policy, violates the FHA. *See Powers*, 501 F.3d at 619 (noting that "[t]he predominance requirement is met if [a] common question is at the heart of the litigation); *Am. Med. Sys.*, 75 F.3d at 1080 (holding that the commonality requirement is satisfied if there is a single factual or legal question common to the whole class). Plaintiffs' inquiry presents the same essential elements of a FHA disparate-impact claim to all class members. *See Wards Cove Packing Company v. Atonio*, 490 U.S. 642 (1989) (formulating a three-step burden shifting framework for FHA disparate-impact claims); *Texas Dept. of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 527 (2015). Because "the common, aggregation-enabling , issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues," the court finds that the predominance requirement is met. *Tyson Foods, Inc.*, 136 S. Ct. at 1045.

Second, the court also finds Defendant's argument, that individual issues predominate

Dr. Steil's damages model, to be unpersuasive. While Defendant argues that Cuyahoga County, not Cleveland, is responsible for the financial ramifications of the water liens—the penalties, the interest, the sale of lien certificates to private investors, and municipal foreclosures (Opp'n at PageID #3632, ECF No. 84)—Plaintiffs correctly identify Defendant's conversion of unpaid water debt into liens is a necessary predicate to the lien's consequences because "[t]he County cannot place a lien or impose fees, penalties, and interest in the absence of Cleveland's certification of a customer's water debt." (Reply at PageID #4739, ECF No. 87.) Therefore, because Defendant's assessment of the water liens is the proximate cause of Plaintiffs' injury, the financial ramifications of the water lien imposed by the County, Defendant remains potentially liable under the FHA. *See* 42 U.S.C. § 3613(c)(1) (providing actual and punitive damages for a violation of the FHA); *Waters v. Mechants' Louisville Ins. Co.*, 11 Pet. 213, 223, 9 L.Ed. 691 (1837) ("a well established principle of [the common] law, that in all cases of loss, we are to attribute it to the proximate cause, and not any remote cause); *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("[W]e generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute."). Furthermore, as the Sixth Circuit has held, "the fact that a defense 'may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)). Accordingly, the court finds that Plaintiffs have met predominance relative to damages, specifically Dr. Steil's model, because the model generally seeks to calculate damages resulting from Defendant's placement of the water liens.

Third, the court determines that Defendant's assertion—that Dr. Steil's model does not serve the classwide assessment of damages because he admitted during his deposition that 20 percent of the Water Lien Class could have no economic damages under his model—is unavailing. (Opp'n at

PageID #3633, ECF No. 84); (Steil Dep. 119:14–16) ("So we're including, you know, 20—I guess 20 percent of our sample had no penalties and interest."). Defendant's argument presupposes that some form of damages, such as penalties or municipal foreclosures, are a necessary predicate for any recovery under the FHA. (*Id.*); (*Id.* at PageID #3630.) Specifically, Defendant states that, "without a predicate foreclosure, there is no path for a Water Lien Class member to recover the penalties and interest that form the backbone of Plaintiffs' damages model; mere imposition of a water lien is insufficient to prove damages under the Act." (*Id.*) However, as discussed above, the court finds that foreclosure or paid penalties is not the predicate to an actionable FHA claim and subsequent damages. Rather, it is Plaintiffs' theory that the assessment of the water liens alone, without any paid penalties or subsequent municipal foreclosure, is the harm that makes housing unavailable under 42 U.S.C. § 3604 and gives rise to damages. Therefore, the court rejects Defendant's argument and finds that Plaintiffs have established predominance.

ii. Superiority

Under Rule 23(b)(3), class certification is appropriate if the court finds "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addressing the superiority requirement, courts consider "the difficulties likely to be encountered in the management of a class action." *Young*, 693 F.3d at 544. Rule 23(b)(3) lists four factors that are pertinent to the issue of superiority: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiffs advance two arguments as to why they have shown that adjudication through a Water Lien Class is superior. First, they maintain that this is a prototypical case for class

certification because there should no difficulty in managing the Water Lien Class given that the case has proceeded on schedule, and "the individual damages with respect to penalties and interests associated with water liens, while not insignificant, may deter individual customers from bringing litigation." (Mot. at PageID #3544, ECF No. 79.) Additionally, they state that:

> Dr. Steil's report demonstrates that the Named Plaintiffs' penalties and interests for water liens collectively equates to more than $6,000. Cleveland Water customers who are living on low-incomes and who may already be making tradeoffs to access basic services, are unlikely to pursue complex civil rights litigation on their own with the prospect of relatively small damage awards. Allowing this case to proceed as a class action thus aggregates modest potential individual recoveries into one action.

(*Id.*) (internal citations omitted.)

Second, Plaintiffs contend that certifying the Water Lien Class will promote judicial economy because "allowing the case to proceed as a class action provides a forum to vindicate the civil rights of Cleveland Water customers who would otherwise lack the ability to challenge Cleveland's discriminatory policies and practices individually." (*Id.* at PageID #3545.)

Defendant counters that Plaintiffs have not established that class treatment is a "superior" method for addressing Plaintiffs' claims in light of the lack of any method for ascertaining the membership of the Water Lien Class, as Rule 23(b)(3) requires. (Opp'n at PageID #3634, ECF No. 84.) Defendant states that Plaintiff's arguments ignore the significant administrative problems caused by Plaintiffs' definition of the Water Lien Class. (*Id.*) Because Plaintiffs have narrowly defined the class as persons "obligated to pay" money towards an assessed water lien, they have avoided difficult issues surrounding proof of injury or standing on behalf of every class member. (*Id.*) Defendants further argue that given Plaintiffs' definition of the Water Lien Class, neither Plaintiffs, nor the damages model Dr. Steil advocates will be able to identify who has paid money towards the water liens, including the balance, penalties, or interest. (*Id.*) In other words, Defendant

-29-

states that there is no methodology for distinguishing the Named Plaintiffs. (*Id.*)

For the reasons outlined above, the court agrees with Plaintiffs. As previously discussed, Plaintiffs' Water Lien Class definition is not limited to only those class members who actually paid any balance, interest, or penalties under the water liens. Instead, the class encompasses those who were assessed water liens and were obligated, irrespective of whether they actually paid pursuant to the water lien, to pay under the water lien. Additionally, the court finds that all of the factors outlined in Rule 23(b)(3)(A)-(D) weigh in favor of certification. Here, there is no evidence that the putative class has an interest in maintaining a separate action (factor one), nor is there any indication that there is a similar litigation pending in another court (factor two). *See Branning v. Romeo's Pizza, Inc.*, 594 F.Supp.3d 927, 937 (N.D. Ohio 2022). Moreover, the court concludes that judicial economy "weighs in favor of concentrating the litigation of the claims in this court" (factor three) because the claims arise from Defendant's alleged conduct that occurred directly within this district, and a resolution of the matter "avoids competing decisions on the issues and offers finality." *Id.* (quoting *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2021 WL 229040, at *10 (S.D. Ohio Jan. 22, 2021)). Finally, because the putative class is well defined and its claims arise from Defendant's alleged discriminatory enforcement of its water liens, which applies to all members of the putative class, the court determines that no major difficulty is likely to arise in the management of the class action (factor four). *Id.* Therefore, the court finds that certification of the Water Lien Class is appropriate under Rule 23(b)(3). Accordingly, the court certifies the Water Lien Class pursuant to Rule 23(b)(3).

### C. Rule 23(g)

Lastly, the court considers whether to designate the counsel of record as class counsel. Pursuant to 23(g), a court that certifies a class must also appoint a class counsel. Fed. R. Civ. P. 23(g)(1). Rule 23(g)(1)(A) lists the following four factors: "(i) the work counsel has done in

identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, or other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs file several exhibits attesting to their work and ability to comply with their obligations as class counsel. Upon review, the court finds that each of 23(g)'s factors is satisfied.

## III. CONCLUSION

For the foregoing reasons, the court grants Plaintiffs' Motions to Certify (ECF No. 65, 79) and certifies Plaintiffs' Water Lien Class under Rule 23(b)(2), (b)(3), and its Shutoff and Overbilling Classes pursuant to (b)(3).   The court hereby appoints current counsel for Plaintiffs as class counsel.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

September 30, 2023