IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ALBERT PICKETT, JR., KEYONNA JOHNSON, JAROME MONTGOMERY, ODESSA PARKS, and TINIYA SHEPHERD (f/k/a/ TINIYA HALL), on behalf of themselves and all other similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF CLEVELAND,<br><br>    Defendants. | CASE NO. 1:19-cv-02911-SO<br><br>JUDGE SOLOMON OLIVER, JR. |

### DEFENDANT CITY OF CLEVELAND'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

Defendant the City of Cleveland moves this Court to certify the September 29, 2023 Order (Doc. 92) denying Cleveland's Motion for Summary Judgment for an immediate appeal under 28 U.S.C. § 1292(b). As this Court recognized, the Order resolves a novel, purely legal question of first impression—whether placement of a lien "makes unavailable" housing within the prohibition of § 3604(a) of the federal Fair Housing Act. *See* Doc. 92 at 10-11. That question is controlling because Plaintiffs' claims under both the Fair Housing Act, and the parallel provision of Ohio's Civil Rights Act, R.C. 4112.02(H),[1] turn on its answer; if placing a lien does *not* directly affect housing availability within the meaning of the Act, then the claims of the Water Lien class all fail.

---

[1] The district court correctly found that Plaintiffs' claim under the Ohio Civil Rights Act follows the same standard as the Fair Housing Act claim, and so this motion focuses on the Court's reasoning as to the Fair Housing Act, which applies with equal force to the claim under Ohio law. *See* Summary Judgment Order, Doc. 92 at 6.

As Rule 1292(b) prompts, there are substantial grounds for disagreement with this Court's resolution of this purely legal question because (1) no other court has ever held that placement of a lien can trigger § 3604(a) of the Fair Housing Act, and (2) this Court's finding that liens "make[] unavailable" housing is inconsistent with the way that other courts across the country have described the purpose and function of liens. Immediate appellate guidance may materially advance the termination of this litigation because, if the Sixth Circuit reverses, it will lead to dismissal of the claims made by the Water Lien class, which is the only class certified to seek money damages in conjunction with their claims under Rule 23(b)(3). Not only would that outcome substantially streamline the remaining issues for trial (including, for example, by obviating the need for competing damages experts), but it would also simplify the process for class notice and materially diminish the valuation of the case and thus increase the prospects of a settlement.

Cleveland therefore requests that this Court (1) enter an Order concluding that the September 29, 2023 Order satisfies the § 1292(b) criteria, and (2) amend its September 29, 2023 Order to add at its conclusion the following language required by § 1292(b): "This Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation."

## THE LEGAL STANDARD

An interlocutory appeal is permitted when the district court certifies "in writing" (1) "that such order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the district court so certifies, the

appropriate court of appeals "may thereupon, in its discretion, permit an appeal to be taken from such order." *Id.*

## WHY THE COURT SHOULD GRANT CERTIFICATION

**I.     The Court's order involves a controlling question of law.**

A controlling question of law for purposes of §1292(b) is one that "could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 451 (6th Cir. 2002) (citing *In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 n. 8 (6th Cir. 1992)). The standard does not require that the question dispose of the entire case. Rather, a purely legal issue, like the one presented here, generally satisfies the "controlling question" requirement "if interlocutory reversal might save time for the district court, and time and expense for the litigants." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930, at 426 (2d ed. 1996). *See also Ahrenholz v. Board of Trustees of the Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000) (noting that § 1292(b) certification is for "pure question[s] of law, something the court of appeals could decide quickly and cleanly without having to study the record"); *Manual for Complex Litigation* § 15.11 (4th ed. 2004) (explaining "orders . . . granting or denying motions disposing of pivotal claims or defenses" are just the kind of "crucial orders" well-suited for interlocutory appeal.)

The Order presents a "controlling question of law." Whether § 3604(a) of the federal Fair Housing Act and § 4112.02(H) of the Ohio Civil Rights Act are triggered by placement of a lien—which occurs *only* if lien placement falls within those statute's prohibition on actions that "make[] unavailable" housing—is a pure question of law that this Court recognized as "novel." *See* Summary Judgment Order, Doc. 92 at 11. A decision reversing this Court and finding that the Act

does not apply to Cleveland's lien-placement policy would require summary judgment with respect to Counts I and II of the Complaint and dismissal of the Water Lien class in its entirety, substantially reducing the overall scope of this case as well as the only claims on which Plaintiffs premise their request for money damages.

Moreover, the pure question of law decided by this Court's summary judgment order merits granting leave to pursue an immediate appeal for the additional reason that the class certification issues to which it relates are already before the Sixth Circuit in a petition for permission to appeal from this Court's class certification order (Doc. 93), which Cleveland filed under Fed. R. Civ. P. 23(f) on October 13, 2023. This Court's summary judgment and class certification decisions—issued only a day apart—are tightly intertwined. If the Sixth Circuit grants immediate review of the class certification order, then judicial efficiency supports giving it the option to review this Court's summary judgment order at the same time.

**II.    The Order involves a novel legal question as to which there is substantial grounds for difference of opinion.**

The Sixth Circuit has held the "substantial grounds for difference of opinion" element of § 1292(b) met by the existence of a novel questions of first impression, alone:

> District courts in this circuit have interpreted 'a substantial ground for difference of opinion . . . regarding the correctness of the decision' to mean '(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question."

*In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (quoting *City of Dearborn v. Comcast of Mich. III, Inc.*, No. 08-10156, 2008 WL 5084203, at *3 (E.D. Mich. Nov. 24, 2008)). It is not

4

alone. *See, e.g.*, *Boim v. Quranic Literacy Inst. and Holy Land Found. For Relief and Development*, 291 F.3d 1000, 1007-08 (7th Cir. 2002) ("As these are questions of first impression, the application of these statutes to the facts alleged here is certainly contestable"); *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984) (explaining a substantial ground for difference of opinion exists where "the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.").

The Court's conclusion that the act of placing a lien can "make unavailable" housing within the meaning of the Fair Housing Act passes this test. This Court is the first ever to hold that placing liens to secure unpaid debt may give rise to disparate-impact liability under § 3604(a) of the Fair Housing Act. Before now, no other court has embraced Plaintiffs' novel theory that because a lien "is an instrument of property ownership," placing a lien on a property *per se* makes housing "unavailable," triggering potential liability under the Act. This Court not only embraced this novel proposition—raising a question of first impression about disparate-impact liability under the Act— but also used it as the basis for certifying a damages class under Rule 23(b)(3) by concluding:

> [T]he court need not meticulously examine each class member's factual background to determine whether they suffered a municipal foreclosure or some other form of individualized damages because the mere assessment of the water lien on their property makes has [sic] the effect of making housing unavailable to them within the scope of 42 U.S.C. § 3604 and thereby allows them to pursue an action under the FHA.

Doc. 93 at 26. The damages class cannot stand but for this Court's one-of-a-kind merits conclusion that placing a lien, alone, can trigger disparate-impact liability under § 3604(a) of the Act.

First, the issue is novel; this Court said so in its summary judgment Order. *See* Doc. 92 at 10. Indeed, this Court appears to be the *first* court to ever address whether a policy of certifying

5

liens to secure debt of *any* kind triggers § 3604(a)'s prohibition. Every case cited by this Court in its summary judgment order referenced policies that *directly* impact the availability of housing, either by making housing harder to come by or by dispossessing families of their current homes. *See, e.g.*, *United States v. Mitchell*, 580 F.2d 789 (5th Cir. 1978) (racial steering); *Hanson v. Veterans Admin.*, 800 F.3d 1381 (Fed. Cir. 2015) (discriminatory appraisals); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) (insurance redlining and discriminatory pricing); *Bowen v. Am. Title Co.*, No. 04-2575, 2007 WL 9706328, at *4 (W.D. Tenn. Mar. 28, 2007) (discrimination in home improvement and debt consolidation lending); *Pitchford v. Am. Title Co.*, No. 04-2743, 2007 WL 9706252, at *4 (W.D. Tenn. Mar. 29, 2007) (predatory lending). None of these cases involve liens.

Second, the Court's conclusion that "Defendant's policy of attaching liens to indebted properties could have an effect on a person's ability to maintain their housing" is at odds with decisions across the country explaining the purpose and function of liens. For example, the District of Vermont recently explained in the context of a Takings Clause claim that "placement of liens 'does not interfere in any way with the present uses' of" property because the owner "retains 'the fundamental incidents of ownership, including the right to possess the property, exclude others from it, alienate the property and continue to use it for residential and recreational purposes.'" *HARR, LLC v. Town of Northfield*, 423 F. Supp. 3d 54, 64 (D. Vt. 2019). Likewise, the United States Claims Court has held that "[a] lien is not an assertion of adverse title or an actual effort to dispossess. It is merely a means of securing a position as a creditor." *First Atlas Funding Corp. Through Kersting v. United States*, 23 Cl. Ct. 137 (U.S. Cl. Ct. 1991). For similar reasons, the Third Circuit has held that, "[u]nder Pennsylvania law, the filing of a lien does not affect the

6

debtor's use of that property until foreclosure." *Cowell v. Palmer Tp.*, 263 F.3d 286, 291 (3d Cir. 2001). All of these cases, in short, confirm that placing a lien does not dispossess a person of housing.

Third, the Court's belief that placing a lien *could* affect housing by acting as the first link in a chain of events that *could lead* to homelessness—such as by "increasing an individual's risk of municipal tax foreclosure" or by "increas[ing] the costs associated with home ownership"—is not cognizable under § 3604(a). This Court rightly looked to the Sixth Circuit's decision in *Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337 (6th Cir. 1994) to guide its analysis of the Fair Housing Act provision at issue but drew the wrong conclusion from that precedent. In *Babin*, the Sixth Circuit took up the question presented of "to what extent the phrase 'otherwise make unavailable' reaches out to make unlawful actions that are removed from the central event of purchasing or leasing a dwelling but nonetheless have some effect on a person's ability to acquire housing." *Id.* at 344. The Sixth Circuit's answer was narrowly tailored to the purpose of the Act itself: "Congress's intent . . . was to reach property owners and their agents who *directly affect* the availability of housing for a disabled individual." *Id.* (emphasis added). While the Sixth Circuit recognized that "the scope of [the statute] may extend further," it only interpreted the Act to reach "other actors who, though not owners or agents, are in a position *directly to deny* a member of a protected group housing rights." *Id.* (emphasis added). But as explained above, placing a lien does not by itself deny anyone housing—let alone *directly* lead to a loss of housing. It was undisputed, and this Court recognized, that further steps such as a municipal tax foreclosure must occur before a lien can cause a loss of housing. *See* Doc. 92 at 11.

7

*Babin* therefore does not support the expansion of Fair Housing Act liability in this Court's summary judgment order.

**III. An immediate appeal may materially advance the ultimate termination of the litigation.**

With the third § 1292(b) factor, we come full circle; the controlling nature of the pure legal question decided by this Court illustrates *why* an immediate appeal may materially advance the ultimate termination of this litigation. If the Sixth Circuit grants an immediate appeal and reverses, its conclusion that Cleveland's lien-placement policy is not actionable under the Fair Housing Act or Ohio's R.C. § 4112.02(H) would require dismissal of Counts I and II of Plaintiffs' Complaint, decertification of the Water Lien class, and dismissal of the only claims by which Plaintiffs seek money damages. In general, the third § 1292(b) factor asks whether an immediate appeal "promise[s] to *speed up* the litigation." *Ahrenholz*, 219 F.3d at 675 (emphasis in original). Reversal by the Sixth Circuit would do just that by removing the need to undertake a lengthy class notice process for the Water Lien class, obviating the need for numerous damages experts (on both sides), and narrowing the scope of the issues eventually to be tried. *See, e.g.*, *Doe 1 v. George Washington Univ.*, 573 F. Supp.3d 88, 102 (D.D.C. 2021) ("To satisfy the third requirement of [§] 1292(b), . . . the moving party must show that 'reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or by saving the parties from needless expense.'").

## CONCLUSION

The Court's September 29, 2023 summary judgment order plainly meets the criteria for an interlocutory appeal under § 1292(b). A holding by the Sixth Circuit that liens do not make housing "unavailable" within the meaning of § 3604(a) of the federal Fair Housing Act or Ohio R.C.

8

§ 4112.02(H) would materially advance the termination of this litigation by disposing of the claims made by the Water Lien class and streamlining the remaining issues in the case. And there is no doubt that this issue, which presents a purely legal question of first impression, is novel and one on which there may be substantial grounds for disagreement. Cleveland therefore respectfully requests that this Court (1) enter an order concluding that the § 1292(b) criteria are met, and (2) amend its September 29, 2023 Order to state: "This Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation."

Respectfully submitted,

*/s/ Michael J. Ruttinger*
Robert J. Hanna (0037230)
Michael J. Ruttinger (0083850)
Lindsey E. Sacher (0087883)
Christine M. Snyder (0086788)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:     robert.hanna@tuckerellis.com
            michael.ruttinger@tuckerellis.com
            lindsey.sacher@tuckerellis.com
            christine.snyder@tuckerellis.com

Mark Griffin (0064141)
Director of Law
City of Cleveland, Ohio
Department of Law
601 Lakeside Avenue, Room 106
Cleveland, OH 44114-1077
Telephone:  216.664.2800
Facsimile:  216.420.8560
E-mail:     mgriffin@city.cleveland.oh.us

*Attorneys for Defendant City of Cleveland*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, a copy of the foregoing Defendant City of Cleveland's Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Michael J. Ruttinger
Robert J. Hanna (0037230)
Michael J. Ruttinger (0083850)
Lindsey E. Sacher (087883)
Christine M. Snyder (0086788)
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:   robert.hanna@tuckerellis.com
          michael.ruttinger@tuckerellis.com
          lindsey.sacher@tuckerellis.com
          christine.snyder@tuckerellis.com

Mark Griffin (0064141)
Director of Law
City of Cleveland, Ohio
Department of Law
601 Lakeside Avenue, Room 106
Cleveland, OH 44114-1077
Telephone:  216.664.2800
Facsimile:  216.420.8560
E-mail: mgriffin@city.cleveland.oh.us

*Attorneys for Defendant City of Cleveland*

6215715.1